**Manolo E. TOLENTINO, Plaintiff,**

v.

**Charles ERICKSON, Wented Realty Corp., and Office & Professional Employees International Union, Local 153, Defendants.**

**No. 79 C 873.**

United States District Court, E. D. New York.

Nov. 3, 1981.

Antonio M. Flores, New York City, for plaintiff.

Sol Orbuch, New York City, for defendants Erickson and Wented Realty.

Shea & Gould, by Vincent F. Pitta, New York City, for defendant Local 153.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

On March 7, 1979, plaintiff commenced this removed action, seeking to vacate an arbitration award made against him, to regain his former position as cashier/clerk at the Wentworth Hotel in New York City, and to recover back pay and damages for emotional distress on account of his allegedly wrongful and discriminatory discharge on November 2, 1978. Plaintiff also named as a defendant his union, Local 153 of the Office & Professional Workers International Union ("union"), affiliated with the New York Hotel & Motel Trades Council, which had a collective bargaining agreement with the hotel at the time in question. The agreement provided for plaintiff's wages, hours and other terms and conditions of employment. Defendants' removal petition invoked the Court's jurisdiction under § 301 of the National Labor Management Relations Act, 29 U.S.C. § 185. At the close of discovery, defendants joined in moving for a summary judgment dismissing the complaint. For the reasons which follow the motion is granted.

The affidavits and depositions on file disclose the following: Prior to the evening of November 2, 1978, plaintiff, a Filipino, had

worked at the hotel as cashier/clerk on the afternoon shift (3:30 p.m. to 11:30 p.m.) since 1971, and had an unblemished work record. He also had never experienced any difficulty with the hotel's manager, Erickson, during the two or so years the latter had been there. On that evening, Miller, a clerk who worked the midnight shift following plaintiff's (11:30 p.m. to 7:30 a.m.), came in early and told plaintiff he was no longer working at the hotel and would not work that night. Plaintiff then phoned Erickson at home on Long Island and told him what happened. After speaking with Miller, Erickson spoke again with plaintiff.

The precise sequence of what was said is in dispute. Plaintiff's version, which we accept as true for purposes of this motion, is that Erickson straightaway ordered plaintiff to continue to work through Miller's shift, and told plaintiff that if he refused Erickson would make sure to fire him. Plaintiff replied that Erickson did not need to threaten but only to tell him to work. Plaintiff maintains he never told Erickson he would not work overnight, but only that if Erickson threatened him, he wouldn't work "because I don't feel like working under threat." Erickson apparently took this as a refusal, said, "Well that's it," and plaintiff hung up. About five minutes later Erickson called and told plaintiff he would not be needed at the hotel beginning the next day. Before calling, Erickson had contacted Madonna, the day shift clerk (7:30 a.m. to 3:30 p.m.), and he came and relieved plaintiff at 11:30 p.m., taking over Miller's shift.

The next day plaintiff sought advice from the union about what to do and one of its business agents, Tronolone, immediately contacted him. A few days after Erickson denied Tronolone's request for reinstatement, plaintiff, Erickson, two of the hotel's principal owners, and Tronolone held a meeting at the latter's request to resolve the matter informally. Plaintiff testified on deposition that it was agreed he would be reinstated to his former shift with two days' back pay, but Erickson allegedly reneged, refusing to let plaintiff work until Erickson had readjusted the schedules and

called for him. A complaint to Tronolone prompted phone calls to the hotel. Further discussion ensued between Tronolone and plaintiff in which, essentially, plaintiff refused to take the midnight shift, which was available to him, except on a guarantee he would be reinstated to his afternoon shift, which the hotel would not give.

At this point, at plaintiff's request, Tronolone brought the matter to arbitration before the Impartial Chairman, as provided in the collective bargaining agreement. Tronolone and a union lawyer represented plaintiff at the hearing on November 29, 1978, at which plaintiff and Erickson testified about their conversations on the evening of November 2. On December 7, 1978 the Impartial Chairman rendered his decision that plaintiff's refusal to work Miller's shift was "unjustified" in the "emergency" circumstances presented, and therefore Erickson had "just cause" to dismiss him.

Following the decision, which plaintiff knew about (though he had difficulty in obtaining a copy until January 1979 after repeated requests), Tronolone refused plaintiff's request to seek further conciliation or reconsideration of the arbitrator's award, telling plaintiff "You have no evidence." Plaintiff learned that Tronolone visited the hotel a few times after this but never in connection with plaintiff's case.

On the basis of the foregoing, plaintiff asserts that the union did not diligently protect plaintiff's rights during the controversy, in breach of its duty of fair representation of all union members, and that the arbitrator's determination that the collective bargaining agreement was not breached was capricious and, accordingly, should be set aside. He also alleges conspiracy between the hotel's management and the union which resulted in plaintiff's dismissal, and that the hotel discriminated against him on account of his national origin. These contentions are without merit.

It is undisputed that a collective bargaining agreement governed the relations between plaintiff and his employer, the hotel. Paragraph 15 of the agreement provided in part that:

"All complaints, disputes or grievances arising between the parties hereto involving questions of interpretation or application of any clause of this agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire to be known as the Impartial Chairman, and his decision shall be final and binding upon the parties hereto."

█ It is also well-settled law that where, as here, the parties have bargained for submission of their contractual disputes to an arbitrator for a final, binding determination, "the proper approach," *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), is to decline to review the merits of the award. In *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), however, the Supreme Court delineated the following exception to the rule customarily according finality to arbitration awards:

"[E]nforcement of the finality provision [of a collective bargaining agreement] where the arbitrator has erred is conditioned upon the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings." 424 U.S. at 571, 96 S.Ct. at 1060.

█ In the present case, plaintiff has provided no basis for the Court to withhold finality from the arbitrator's decision and permit plaintiff to seek further remedies against his union or former employer. First, there is no question that plaintiff has not demonstrated, as he must, see *Hines v. Anchor Freight, supra,* 424 U.S. at 570, 96 S.Ct. at 1059, that the arbitrator's determination to uphold the discharge under the collective bargaining agreement was erroneous. In relevant part, ¶ 8(F) of the agreement stated:

"It is agreed that employees will work a reasonable amount of overtime and on the sixth day when requested to do so at the rate of pay set forth in this Agreement."

And plaintiff testified on the basis of his seven years' experience at the hotel that it was virtually "understood" that overtime was necessary if the next shift did not show. Furthermore, ¶ 14(A) of the contract provided that the employer "shall have the right to discharge any employee," subject only to the union's questioning whether there was just cause for the discharge. Even if, as plaintiff claims, Erickson immediately threatened plaintiff with dismissal if he did not work Miller's shift, it is clear that plaintiff's refusal to work the overtime solely because of the manner in which he was informed of his obligation, which is the substance of his complaint, could properly have been considered wrongful.

In addition, plaintiff's further assertion that Erickson's attitude reflected an unlawful discriminatory animus towards plaintiff as a Filipino is wholly unsubstantiated, except for plaintiff's subjective rationalization that it must have been so. On the contrary, plaintiff himself acknowledged that in his prior relations with Erickson he had never experienced any personal difficulties. The assertion is also simply not relevant to the issue whether the arbitrator's decision was correct. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974). At most the claim of discrimination provided plaintiff with an alternative to his arbitral remedies, *id.*, which, concededly, he failed timely to pursue.

Secondly, no genuine issue has been created on the present record as to whether the union satisfied its statutory duty of fairly representing plaintiff in connection with the arbitration proceedings. The traditional starting point in fair representation cases is the Supreme Court's statement in *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967):

"A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

We note here that plaintiff has disavowed any discrimination on the union's part with respect to his Filipino background.

■ Of course, no grievance procedure can be expected to be error free, and a showing of mere negligence or errors in judgment is insufficient to sustain a plaintiff's burden of showing his union breached its duty of fair representation. *Hines v. Anchor Motor Freight, supra,* 424 U.S. at 570–71, 96 S.Ct. at 1059. See *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 891 (4th Cir. 1980). Rather, a plaintiff must show "substantial evidence of fraud, deceitful action, or dishonest conduct," *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964), or conduct so arbitrary or perfunctory as to be deemed irrational, *Jones v. Trans World Airlines, Inc.,* 495 F.2d 790, 798 (2d Cir. 1974), before a federal court will conclude that the union's performance so tainted the grievance procedure as to require the vacating of the arbitrator's presumptively final award. Moreover,

> "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject only to good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

See generally, *Ryan v. New York Newspaper Printing Pressmen's Union,* 590 F.2d 451, 455–56 (2d Cir. 1979).

■ Applying these principles to the undisputed facts, it is plain that the union fairly represented plaintiff in the arbitration proceedings. First, Tronolone was in immediate and frequent contact with plaintiff throughout the effort to resolve the dispute, both informally and formally. Second, it is undisputed that plaintiff testified and was represented by union counsel at the arbitration hearing.

Third, although Tronolone failed to testify as a witness for plaintiff, there is no question that he could not have aided plaintiff materially in this manner. The issue before the arbitrator was whether what Erickson and plaintiff said to each other gave the manager just cause to discharge plaintiff. Tronolone lacked personal knowledge of these events. Furthermore, plaintiff has not suggested that Tronolone's testimony about plaintiff's unblemished record and the initial, informal resolution purportedly reached with the principal owners and ignored by Erickson, was relevant to the issues in arbitration, except insofar as it provided a ground on which Tronolone might have sought reconsideration or further conciliation, on account of the apparent harshness of the arbitration result.

Yet as representative of all employees in the bargaining unit, the union had wide discretion to determine in good faith when further pursuit of an individual's grievance would be fruitless and a drain upon the union's limited resources. See *Humphrey v. Moore, supra; Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167 (5th Cir. 1971); *Bazarte v. United Transp. Union,* 429 F.2d 868 (3d Cir. 1970). Under the facts of this case, there was no basis for reconsideration or appeal on the merits; as Tronolone told plaintiff, "You have no evidence." In view of the foregoing, and plaintiff's disavowal of discriminatory animus on the part of the union, we cannot conclude that there is even a triable issue as to whether the union acted improperly in deciding not to pursue plaintiff's grievance further than it did. See *Vaca v. Sipes, supra,* 386 U.S. at 190–95, 87 S.Ct. at 916–19.

Nor can it be said that the union's asserted failure to secure a written agreement embodying the terms of the informal resolution reached with the owners was a breach of the duty of fair representation. The purpose of the meeting was to work out the parties' differences on an informal basis. In good faith, which plaintiff has not challenged, the union could have understood, as plaintiff did, that plaintiff was to return to work on the afternoon shift, as the owners agreed. The unfortunate circumstances that Erickson reneged on the deal, asserting his prerogative as manager to set the work schedules of the hotel's

employees, and was backed in this by the owners, were not foreseeable when the meeting ended. At most, the failure to secure a writing in the context of informal dispute resolution was an error of judgment which does not show that the union breached its duty of fair representation.

Lastly, plaintiff has included allegations that the union, the hotel owners and Erickson conspired to deprive him of his employment rights. The only facts he alleges to support his claim are eye winks purportedly exchanged between the owners and Tronolone at the informal meeting during plaintiff's recital of his story. This is plainly too insubstantial a basis for the serious charge of conspiracy to withstand the motion for summary judgment. See *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972).

Accordingly, defendants' motion for summary judgment is hereby granted, and plaintiff's complaint is dismissed.

SO ORDERED.