Henry J. HELMER, Patrick Bencivengo, James Crow, William Dodd, John Duffy, James Kelly, Jack Lopez, James Mottett, Charles Piscopo, Manuel Sanchez, Philip Varrichio and John Walsh, Jr., Plaintiffs,

v.

Eugene BRIODY, Joseph Zummo, Jack Murphy, Michael Cotter, Richard Bestoff, each in his individual capacity only; Antonio Sanchez, in his official capacity as Secretary–Treasurer of Local 1–2, UWUA, AFL–CIO and in his individual capacity; Joseph Fino; and

---

Local 1–2, Utility Workers Union of America, AFL–CIO; and Consolidated Edison Company of New York, Inc., Defendants.

No. 89 Civ. 0467 (RWS).

United States District Court, S.D. New York.

Aug. 18, 1989.

Kevin G. Jenkins, New York City, for plaintiffs.

Clifton & Schwartz, New York City (Arthur Z. Schwartz, of counsel), Donald F. Menagh, P.C., New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendant Eugene T. Briody ("Briody") and individuals allied in interest with him, including Antonio Sanchez, Secretary Treasurer of Local 1–2 Chapter (the "Local") of the Utility Workers Union of America ("UWUA") and the Local (collectively the "Defendants"), have moved pursuant to Rule 56 of the Fed.R.Civ.P. for summary judgment to dismiss the thirtieth and thirty-seventh causes of action of the Amended Complaint of plaintiff Henry J. Helmer ("Helmer") and individuals allied interest with him (collectively the "Plaintiffs"), alleging a breach of the duty of fair representation and a breach of a collective bargaining agreement by the Defendants and Consolidated Edison Company of New York, Inc. ("Con Ed"), and to vacate the preliminary injunction of January 19, 1989. For the reasons set forth below, the motion for summary judgment is denied and the motion to vacate the preliminary injunction is granted.

*The Parties*

Plaintiff Helmer is a member of the Local and a member of the Executive Board of the UWUA. He was a former Con Ed employee and the former business manager who was removed from that office on charges heard by a Trial Committee in the fall of 1988. The remaining named plain-

tiffs are members of the Local affiliated in interest with Helmer.

Defendant Briody is the Business Manager of the Local and was its president from July 1986 through February 2, 1989. He has held a full time office in that organization since 1977. He was elected Business Manager in the March 1989 union election where he was opposed by Helmer. The remaining named defendants are officers or members of the Local affiliated in interest with Briody.

The Local is a local labor organization of the UWUA within the meaning of Section 3(i) of the Labor–Management Reporting and Disclosure Act ("the LMRDA"), 29 U.S.C. Section 402(i) and is the certified collective bargaining representative of approximately 14,000 non-managerial employees of the defendant Con Ed. The Local has its offices in New York City.

Con Ed is a public utility corporation with its principal place of business in New York.

*Prior Proceedings*

Helmer filed a complaint in this action on January 20, containing thirty-six causes of action alleging violation of his free speech rights under § 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) and Article XX, Section 1 of the By Laws of the Local, his rights to participate in the Local's process under § 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1) for retaliation for cooperation with law enforcement officials in violation of § 609 LMRDA, 29 U.S.C. § 529, for violation of his rights as Business Manager under Article XI of the By Laws of the Local, for retaliation in violation of § 101(a)(5), LMRDA, 29 U.S.C. § 411(a)(5), for violation of the Constitution of UWUA, and for violation of Article II, Section 1 and Article III, Section 1 of the By Laws of the Local, for failure to represent him adequately and for failure to recognize a member in good standing in violation of § 3(f) and (a), LMRDA, 29 U.S.C. § 402(f) and (a), and for violation of the procedures mandated by Articles V, VI and VIII of the By Laws of the Local. The events giving rise to these allegations include the bringing of charges against Helmer for misconduct as

business manager, the conduct of the trial before the Trial Committee, its determination to remove Helmer, the determination by the Local that Helmer was no longer a member in good standing, and the refusal of the Local to prosecute a grievance against a Con Ed determination that Helmer had been terminated, among other things.

Helmer moved for preliminary injunction to preserve his union status in connection with the then pending union election of officers including business manager for which office he was a candidate. For reasons set forth in open court at the close of the hearing on January 20, 1989, a preliminary injunction was granted.

Following the election the Defendants moved for summary judgment dismissing certain causes of action and to vacate the preliminary injunction. Helmer moved for leave to amend his complaint which was granted and the Amended Complaint adding a thirty-seventh cause of action and Con Ed as a defendant was filed on June 23, 1989. The defendants renewed their motion for summary judgment seeking dismissal of the Thirtieth Cause of Action alleging a breach of the duty of fair representation, and the Thirty–Seventh Cause of Action alleging violation by Con Ed of its collective bargaining agreement with the Local by refusing to reinstate Helmer to the job and seniority he had achieved at the time his leave of absence commenced. The Defendants again seek to have the preliminary injunction vacated. The motions were heard and fully submitted on July 7, 1989.

*The Facts*

In 1955, Helmer became an employee of Con Ed and worked for them until 1971 when he became a full-time paid staff employee of the Local. The Local informed Con Edison of Helmer's appointment. Helmer's Con Edison personnel file indicates that Helmer went on leave of absence as an employee of the Local in October, 1971. That leave was extended indefinitely. Article VIII, section 32 of the collective bargaining agreement between the company and the union provides as follows with respect to a leave of absence:

32. *Leaves of Absence for Union Officers, etc.:*

Members of the Union who have been or are hereafter elected or appointed to office in the Union, and are thereupon certified to the Company by the Union as having to be absent from their regular work for the proper performance of their duties to the Union, shall be granted leaves of absence without pay for the time they hold such office without prejudice to their seniority status and service records up to the time of the granting of such leaves, as provided in Paragraph 28(g) of this contract. When their terms of office expire, such members of the Union shall be reinstated by the Company in jobs and seniorities at least equivalent to those held by them at the times such leaves of absence were first granted.

Section 45(2) of the Con Ed/Local 1–2 contract states:

(2) Employment Preference for Former Employees: In recognition of their experience and training with the Company, employees who resign after January 1, 1962, under creditable circumstances will be given preferred consideration for re-employment provided: (a) suitable job vacancies exist for which they are qualified; (b) their prior employment records were satisfactory; and (c) they are physically qualified for reemployment as determined by an examining physician of the Company.

After the passage of the Employee Retirement Income Security Act ("ERISA") by Congress in 1974, Con Edison, through the Consolidated Edison Pensions and Benefits Plan (the "Plan") provided that an employee with vested rights to any accrued pensions before he turns 65 and who terminates either voluntarily or is terminated by Con Edison is eligible for a deferred pension or "cash out" of such deferred pension if his age plus years of accredited service are less than 75. Under the "cash out" provided for in the Plan, the employee could receive a lump sum payment representing the present value of his pension assuming the normal retirement age. The

relevant provision of the Plan is set forth in Appendix A annexed hereto.

Helmer's personnel file states that on April 30, 1979, Helmer resigned for "other causes." Thereafter, Helmer withdrew the funds in his pension account, which included payments through July 1971, and effected a "cash out," by signing a form subtitled "Benefits Statement for Terminating Vested Employee." He received a lump sum of $5,860.40 and signed the following form:

CONSOLIDATED EDISON PENSION
AND BENEFITS PLAN
INTERIM FORM

BENEFITS STATEMENT FOR
TERMINATING VESTED
EMPLOYEE

(Applicable when age plus service equals less than 75 at termination)

A. *Deferred Pension*

Under the provisions of the Consolidated Edison Pension and Benefits Plan, effective August 1, 1975,

| Henry J. Helmer | 055–30–1248 | 66223 |
|---|---|---|
| Employee's Name | Social Security # | Employee # |

having completed the required years of accredited service on the vesting schedule under this Plan, is entitled to a non-forfeitable right to a pension payable on the first day of the month following the month of your sixty-fifth (65) birthday. The amount of your pension, beginning 3–1–2002 is $2,541.37 [annually] or $211.78 [monthly].

1. A reduced pension payable when you reach an age which, when added to your years of accredited service, 16, is equal to 75 or more. The earliest date on which you may receive this pension is 8–1–95. The amount of your pension, payable beginning on that date, is $119.02 per month.

2. A reduced pension upon your application at any time between 8–1–95 and 3–1–2002 the date pension begins for age 65. This pension will be an amount reduced in accordance with your age at the time pension begins.

The application of a Joint and Survivor Annuity Option factor, to each of the pensions cited above, is required so as to provide, on your death, an annuity to your spouse in the amount equal to 50% of your reduced pension. Your spouse will not be entitled to any benefits until your pension begins, nor will such benefits be paid, in any event, until after your death. Unless you do not want this, your pension will be reduced to provide this benefit.

**B.** *Option to "Cash Out" Vested Rights*

You may elect to take a cash out in an immediate lump sum payment in place of a deferred pension. Of course, a "cash out" payment of a vested deferred pension terminates any right you or your spouse may have to any participation in a Joint and Survivor Annuity.

If a "cash out" is elected, and you are later reemployed, all rights to your accrued vested pension based on the accredited years of service included in determining your deferred pension cited above will be satisfied and suspended until such time as you repay the full amount of such "cash out" with interest at 5½% per annum compounded annually from date of cash out to date of payment.

You may defer election to "cash out" not later than 6–1–79. The value of the "cash out" will be computed as of 5–1–79.

**C.** *Election*

The details of my vested rights and options under the Plan have been fully explained to me and understood by me and, as indicated by my signature, I hereby make the following election:

1. I elect to take a deferred pension on the basis of my pension payable at age sixty-five (65).

_____    _____
Employee's Signature         D:.te

2. I elect to take a "cash out" of my vested accrued benefit in satisfaction of any and all vested rights in the amount of a:

Lump sum amount of $5,860.40 payable on 5–1–79.

Henry J. Helmer         5/7/79
Employee's Signature      Date

APPROVED:

_____   _____
Plan Administrator      Date

The foregoing statement has been forwarded to the Department of Labor _____, and a copy given to the terminating employee _____.

Benefits Planning
5/6/75

Helmer continued to serve as an officer and full time member of the Local and as a member of the National UWUA after he had cashed out. In 1987, Helmer, who was then Assistant Business Manager of the Local was appointed and ratified by the membership as the Local's Business Manager.

Early in October, 1988 Helmer was served with charges of misconduct which by way of relief sought his removal as Business Manager. A Trial Committee held a hearing and upheld the charges. The determination was subsequently upheld in a membership meeting vote and Helmer was removed on November 9, 1988.

The By Laws of the Local provide as follows:

Article II Jurisdiction Section. The jurisdiction of this Local shall include but not be limited to the employees of the Consolidated Edison Company of New York, Inc. * *

Article III. Membership Section 1. Eligibility. Any person shall be eligible for membership who is within the jurisdiction of this Local.

Shortly thereafter, Helmer applied to Con Ed for reinstatement as an employee under Section 32 of Article VIII of the collective bargaining agreement. He requested reinstatement to the position of Senior Coordinator, the position he had had with Con Ed in 1971 before working full time for the Local. Con Ed refused to reinstate him. Helmer on December 1, 1988 then filed a grievance claim with the Local.

Briody conducted an investigation of Helmer's claim. He spoke first with Thomas Galvin ("Galvin") Con Ed's then vice presi-

dent for Employee Relations to determine why Helmer had been turned down. Galvin responded that according to Con Ed, Helmer had terminated his employment in 1979 when he cashed out and it was against the policy of Con Ed to allow a union officer to both retire and collect his pension money and stay on leave of absence because that would give union officers a privilege no other employee had.

Briody also spoke with James Joy ("Joy") the Business Manager of Local 1–2 from 1971 through 1980, and then the president of the National UWUA until 1986, who informed him that there was no precedent where a union officer who "cashed out" had gone back to work for Con Ed under the leave of absence clause.

Joy also advised Briody that in 1979 he [Joy] advised Helmer not to withdraw his money because to do so under the pension plan, an employee had to terminate his employment. Such "termination" would mean that Helmer would be "taking a chance about being re-employed and on being able to launch a political comeback." Joy, who did not cash out, also repeated these same personal views at various meetings of Local 1–2 officers, some of which Helmer attended.

Joy's position was consistent with the information Briody had obtained at around that same time.

Finally, Briody spoke with two attorneys who handled most of the union's arbitrations and were familiar with the collective bargaining contract and pension plan. Both attorneys agreed that Helmer's grievance was without merit.

By letter of December 21 signed by Briody as President the Local declined to prosecute the grievance and demanded the $240,000 it claimed Helmer had withdrawn from the Local's pension fund.

Seven other officers of the Local have "cashed out" but none have sought reemployment other than Helmer. In January 1989 Helmer was removed from the National Board of the UWUA on the grounds that a former officer not within the jurisdiction of the Local could not hold union office. Thereafter Helmer on January 20

filed this action, and by order to show cause sought injunctive relief to preserve his status as a member of the Local, both for reinstatement purposes, to continue his campaign for local office, and to prosecute his appeal from his removal. The injunction as stated above issued, and the UWUA reinstated Helmer in compliance.

In the March 1989 elections of the Local, Briody, opposed by Helmer, won the position of Business Manager by a margin of 5670 to 3359. Although Helmer has alleged elsewhere that Briody and his supporters abused the funds and other resources of the Union, and colluded with Con Edison to manipulate the election, the validity of the election is not at issue on this motion.

On April 12, 1989, Helmer filed a charge with the National Labor Relations Board making some of the same allegations contained in his Amended Complaint. On June 22, 1989, Regional Director Daniel Silverman dismissed Helmer's charge after an investigation finding that the evidence failed to support the charge.

On May 1, 1989, Helmer resumed employment with Con Edison as an on-trial employee pursuant to Section 45(2) of the collective bargaining agreement as a meter reader assigned to Westchester. On May 23, 1989, Con Ed terminated Helmer due to his physical inability, as authenticated by medical reports, to perform his job.

*Standards Applicable to Summary Judgment Motions in Fair Representation Claims*

The Local's duty of fair representation consists of representing employees in good faith and with dedication; the duty is breached when a "union's conduct towards a member is arbitrary, discriminatory or in bad faith * * * a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca v. Sipes*, 386 U.S. 171, 190–191, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967).

Summary judgment must be granted if there is a "complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). In a duty of fair representation case, it is not enough to question the union's wisdom in not proceeding to arbitration. *Dutt v. United Airlines, Inc.,* 125 LRRM 2240, 2242 (N.D. Cal.1987). "In order to survive [a] summary judgment motion, the plaintiff must allege bad faith on the part of the Union ... and must set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty, or arbitrary exercise of discretion.... Conclusory allegations, without specifying supporting facts to show a union's lack of good faith, fail to state a valid claim." *Spielman v. Anchor Motor Freight, Inc.,* 551 F.Supp. 817, 822 (S.D.N.Y.1982). *See also Barr v. United Parcel Service,* 868 F.2d 36, 43 (2d Cir.1989).

A union has "wide discretion to determine in good faith when pursuit of an individual's grievance would be fruitless." *Tolentino v. Erickson,* 525 F.Supp. 812, 816 (E.D.N.Y.1981). An error in judgment is not sufficient; a plaintiff must show "substantial evidence of fraud, deceitful action, or dishonest conduct, or conduct so arbitrary or perfunctory as to be deemed irrational." *Id., see also Jones v. TWA, Inc.,* 495 F.2d 790, 798 (2d Cir.1974). Courts cannot intercede on behalf of employees who may be prejudiced by a rationally founded decision which operates to their disadvantage. *Capobianco v. Brinks, Inc.,* 543 F.Supp. 971, 975 (E.D.N. Y.1982), *aff'd.,* 722 F.2d 727 (2d Cir.1983).

Applying these authorities to the facts found here, there are two issues which Briody and the other defendants must establish, that there is no factual conflict with respect to the Local's exercise of its discretion and that there is no merit to Helmer's grievance. While each issue may ultimately be resolved in favor of Briody, the issues are not appropriate for summary judgment.

*Helmer Has Presented a Triable Issue as to the Fairness of His Representation*

■ It is, of course, Helmer's position that Article VIII, Section 32 of the collective bargaining agreement permitted union officials a leave of absence and protection of their job and seniority rights upon reemployment. Seven union officers have "cashed out," and Helmer's position can only be regarded as favorable to them and any other union officer who has "cashed out."

During the time that the Local, through Briody, determined not to prosecute Helmer's grievance, he was a political opponent of the Defendants and a putative candidate for election once again as business manager, despite his removal. A factual issue is thus created as to whether the Local's action was an arbitrary exercise of discretion or a good faith decision.

Briody and the other defendants seek to reinforce their decision by conversations and understandings achieved at the time that the issue of "cashing out" first arose and by examining the relevant documents, such as the "Interim Form" executed by Helmer when he "cashed out" and the Plan. On these documents and Con Ed's action the Defendants maintain that Helmer's position is without merit.

However, the "Interim Form" contains a reference to reinstatement, and no authority has been cited for the proposition that in the event of a conflict the Plan is to take precedence over the collective bargaining agreement. Although Helmer might well have lost his grievance, it cannot be said to be without merit.

· For these reasons, the Defendants' motion for summary judgment dismissing the inadequate representation claim is denied.

Defendant Con Ed has not answered nor been heard with respect to the Thirty–Seventh Cause of Action, its denial of reemployment to Helmer under the Plan. Briody has no standing to dismiss Helmer's claim against Con Ed which might or might not have been successful had the grievance been filed. Con Ed's policy for adhering to its view of the Plan rather than the collective bargaining agreement has yet to be presented.

*The Preliminary Injunction is Vacated*

Standard for an Injunction

The general standard for granting a preliminary injunction is where the moving

party has established (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of hardships tipping decidedly in its favor. *Plaza Health Laboratories, Inc. v. Cesar A. Perales,* 878 F.2d 577, 580 (2d Cir.1989); *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982).

■ District courts have continuing power to vacate or modify injunctions where there is a showing of a change in the operative facts so that the injunction is no longer justified. *System Fed'n. No. 91, Ry. Employees' Dep't, AFL–CIO v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *S.C. Johnson & Son v. Johnson,* 175 F.2d 176 (2d Cir.), *cert. denied,* 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949); *Grand Union Equip. Co. v. Lippner,* 167 F.2d 958, 960 (2d Cir.1948).

■ Helmer's injury at the time of the issuance of the preliminary injunction was indeed irreparable, the loss of his ability to participate in the affairs of the Local, and in particular to conduct his campaign for election as business manager. Those matters have since been resolved. His removal from union membership remains subject to the union's appellate procedures. If indeed he has been wrongfully denied reemployment by Con Ed, that injury is reparable by money damages.

Even if it were concluded that denial of membership in the Local were an irreparable injury, the balance of hardship has now tipped against Helmer. His campaign has been concluded, and his rights are fixed whatever they may be. There has been no showing that the continuation of the injunction is necessary to the preservation of any of Helmer's presently existing rights.

The Local is entitled to enforce the determinations of its membership. Indeed, the defendants have cited the case of Thomas Kelly as a former officer who retained membership in the Local by special resolution of the Executive Board, a resolution sponsored by Helmer. While the bitterness surrounding the removal and the election remain, this remedy may well be futile, but it nonetheless exists. The Local at some point suffers hardship from not being able to enforce the decisions of its governing body and its members.

It is one thing for a court to seek to promote the democratic process in union affairs. It is another to vest a right in membership denied by the jurisdiction of the Local. In this connection it should be noted that there is no evidence that Helmer has been denied employment at his former job as a result of any action by the Local.

While Helmer has been discharged from his entry level reemployment, for physical reasons, such a denial, on this record, would not appear to preclude other employment by Con Ed. Even as Con Ed apparently takes the position that it is not required to grant Helmer employment to permit him to continue his union activities, it would seem that he could not be denied such employment because of the views of the Local's current leadership.

On balance, the hardships tip against Helmer, and for that reason and for the absence of irreparable injury, the preliminary injunction will be vacated.

*Conclusion*

The defendants' motion to dismiss the thirtieth and thirty-seventh causes of action is denied, and their motion to vacate the previously granted preliminary injunction is granted.

It is so ordered.

### APPENDIX A

### RESTATED PLAN

The Consolidated Edison Pension and Benefits Plan

Effective August 1, 1975

As Amended effective September 23, 1980

5. ELIGIBILITY FOR A RETIREMENT PENSION (Cont'd)

   D. *Termination of Service in the Discretion of the Company and Voluntary Termination.*

A participant who acquires a vested right to his accrued pension prior to having at-

tained age sixty-five (65), and who termi-nates voluntarily or whose service is termi-nated by the Company for a reason other than disability, will be eligible for a pension if his age plus years of accredited service shall total not less than seventy-five (75), or a deferred pension (or a cash-out of his deferred pension) if his age plus years of accredited service shall total less than seventy-five (75).

### E. *Participants who Commence Employment Between Ages 55 and 60.*

A participant who commenced employment with the Company on or after his fifty-fifth (55th) birthday but not later than his sixtieth (60th) birthday and who remained in the continuous employ of the Company and attained age sixty-five (65) will be entitled to a pension upon his retirement from the service of the Company.

### F. *Cash–Out of Deferred Pension.*

A participant whose age plus years of accredited service equal less than seventy-five (75) and who on termination of service with the Company has vested rights, may, in lieu of a deferred pension, cash-out the value of his pension payable at the attainment of age sixty-five (65).

### 5. ELIGIBILITY FOR A RETIREMENT PENSION (Cont'd)

### F. *Cash–Out of Deferred Pension.* (Cont'd)

The employee will be allowed a reasonable period after termination in which to advise the administrator whether he chooses either to cash-out or to take a deferred pension. However, this period will not extend beyond the first day of the second month following the employee's date of termination.

### G. *Repayment of Cash–Out.*

A participant who has cashed-out his vested rights and is subsequently reemployed may regain his vested rights for the period of service on which the cash-out was based by paying to the trust the full amount of such cash-out with interest at five and one-half (5½%) per annum, or such other rate of interest as may be used for actuarial valuation of the Plan at the time of the cash-out, compounded annually from the date of cash-out to the date of repayment.

Vested right for any of such prior service will be suspended until the cash-out is fully repaid. However, any of the years of accredited service following reemployment will be vested.

### 10. COMPUTATION OF BENEFITS (Cont'd)

### B. Computation of Pensions, Annuities, or Benefits Based Upon Annual Pension. (Cont'd)

### (10) *Determination of Present Value of Vested Pension Payable at Age Sixty–Five (65)—Cash–Out*

The cash-out is a lump-sum payment representing the present value of the deferred pension payable to the employee at Normal Retirement Date and will be computed by multiplying the pension determined in accordance with paragraph 10A by the factor in Table E corresponding to the age of the employee on the first day of the month following termination.