**Arlene WISNESKI f/k/a Arlene Sabol, Plaintiff,**

v.

**NASSAU HEALTH CARE CORPORA-TION, Jean Prochilo, Hilda Oakland, Pat Griffin, Eleanor Coney, Defendants.**

No. CV01–5312(DRH)(ETB).

United States District Court, E.D. New York.

Dec. 9, 2003.

Wolin & Wolin Esqs. by Alan E. Wolin, Esq., Jericho, NY, for Plaintiff.

Nixon Peabody LLP by Amy L. Ventry, Esq., Karen L. Campo, Esq., Garden City, for Defendants.

## MEMORANDUM & ORDER

HURLEY, District Judge.

Plaintiff, a registered nurse who suffers from certain limitations due to a knee condition, initiated an action for failure to accommodate her disability as required by the Americans with Disabilities Act ("ADA") and certain state-law provisions. Subsequently, pursuant to Fed.R.Civ.P. 56, Defendants submitted the instant summary judgment motion. For the reasons discussed *infra,* the Court grants Defendants' motion.

## I. DISCUSSION

### A. Summary Judgment Standard.

It is axiomatic that summary judgment may not be granted unless "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477

U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden to show that no genuine issue of material fact exists lies with the moving party. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). Despite this burden, once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996).

With the facts and legal issues framed by the parties, the Court must evaluate the proffered materials to determine whether a genuine issue of material fact remains. *Id.* In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.* However, genuine issues of fact are not created by conclusory allegations. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993). Rather, summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

B. Background Relevant to alleged Discriminatory Acts After March 24, 2000.

In stating the following facts, the Court primarily relies upon the parties' Local Civil Rule 56.1 Statements of Undisputed Facts. The Court notes that Plaintiff failed to properly respond to each numbered paragraph in Defendants' Rule 56.1(a) statement. *See* Local Civil Rule 56.1(b). Instead, Plaintiff has submitted a separate narrative of facts that makes no specific reference to Defendant's 56.1(a) statement. While this constitutes an improper Rule 56.1(b) statement, the Court has read both statements and has endeavored to identify the undisputed and disputed facts therein. Unless otherwise noted, the following facts are undisputed by the parties. The Court provides pinpoint citations to the evidentiary record for all quotations.

Plaintiff is trained and licensed as a registered nurse. In 1989, Plaintiff began having pain in her right knee. To alleviate that pain, Plaintiff had a tibial osteotomy procedure that year. The tibial osteotomy was not wholly successful and, in 1990, Plaintiff underwent a complete knee replacement procedure. From 1990 until 1994 Plaintiff received social security benefits due to her knee condition.

In 1994, Plaintiff was hired by the Nassau County Department of Health to perform a position titled "Registered Nurse I" ("RNI"). It is undisputed that the RNI position required the following essential duties: (1) examining patients, (2) diagnosing patients, (3) administering medications, (4) assisting physicians with medical procedures, (5) maintaining detailed records regarding patients, (6) assisting patients who have difficulty standing and walking and (7) lifting patients off and on the examination tables. It is further undisputed that the performance of these duties required a great deal of standing and walking by Plaintiff. While Plaintiff could sit when the satisfaction of her duties did not require her to stand, the average work day involved five hours of standing and walk-

ing. *See* Plaintiff Rule 56.1(b) Statement ¶ 7.

Initially, Plaintiff was assigned to work at the Inwood–Lawrence Community Health Center in Roosevelt, New York. At some point in 1996[1], Plaintiff was injured in a second motor vehicle accident. This accident aggravated Plaintiff's knee condition. In September 1996, Plaintiff requested a twelve-week paid medical leave. This request was granted by Defendants. Upon expiration of this leave period on December 13, 1996, however, Plaintiff was not medically cleared to return to work. Thus, at the expiration of the paid medical leave period, Plaintiff requested, and was granted, an unpaid leave of absence. Plaintiff remained on unpaid medical leave from December 14, 1996, until August 29, 1997.

In September 1997, Plaintiff returned to her position as an RNI at the Inwood–Lawrence Community Health Center in Roosevelt, New York. Plaintiff maintains that the standing required at work aggravated her knee condition. Due to the aggravated symptoms of her knee condition, on October 26, 1998, Plaintiff requested and received another twelve-week paid leave period. During that paid leave period, Plaintiff underwent another knee replacement procedure. Once again, upon expiration of Plaintiff's paid medical leave, she was not medically cleared to return to work. On January 15, 1998, at her own request, Plaintiff began a second unpaid leave period. On October 23, 1999, Plaintiff was medically cleared to return to work. Plaintiff's physician noted no limitations upon Plaintiff's abilities when clearing her to return to work. *See* Ventry Aff., Ex. M.

After returning to active duty, rather than return to the Inwood–Lawrence Community Health Center, Plaintiff was assigned by Defendants to the Hempstead Community Health Center. This change in locations did not result in a change in Plaintiff's duties as a RNI. However, it is undisputed that the Hempstead Community Health Center was understaffed. As a result of this understaffing, Plaintiff maintains that she had to stand for seven hours per day. Plaintiff contends that she only had to stand five hours per day at the Inwood–Lawrence Community Health Center, her previous assignment.

At the time of Plaintiff's return to active duty, Defendant Eleanor Coney was the manager and Defendant Eileen Griffin (incorrectly sued as "Pat Griffin") was the Nursing Supervisor at the Hempstead Community Health Center. In June 2000, Defendant Hilda Oakland replaced Coney as the manager of the Hempstead Community Health Center. At all relevant times, Coney, Griffin and Oakland reported to Defendant Jeanne Prochilo, who was the Vice President for Community Health Centers at Defendant Nassau County Health Care Corporation ("NHCC"). At this point, it would be helpful to discuss the NHCC in greater detail.

NHCC was created via statute as a public benefit corporation. *See* Ventry Aff. ¶ 3. NHCC was established with the purpose of acquiring certain assets of the County of Nassau that related to the provision of health care. These select assets included the Nassau University Medical Center and the Nassau County Community Health Centers. Included among these Community Health Centers were the two facilities for which Plaintiff worked: the Inwood–Lawrence Community Health Center and the Hempstead Community Health Center. On September 24, 1999, NHCC acquired the Community Health

---

1. The parties do not agree as to the precise month of the accident. *See* Plaintiff Rule 56.1(b) Statement ¶ 11; Defendants' Rule 56.1(a) Statement ¶ 24.

Centers from Nassau County. Effective September 29, 1999, NHCC became responsible for the assets and operations of the Community Health Centers. This transfer occurred while Plaintiff was on unpaid medical leave. As a precondition for her return to work, Plaintiff was offered, and accepted, a transfer to NHCC. With this background in mind, the Court returns to Plaintiff's employment at the Hempstead Community Health Center.

In December 1999, Defendants Coney and Griffin learned that Plaintiff was having difficulty moving around the Hempstead Community Health Center. Thereafter, without any request from Plaintiff, Defendants Coney and Griffin transferred Plaintiff from the clinic areas, where she had previously worked, to the triage area. As the nurse assigned to the triage area, Plaintiff was required to perform initial assessments of walk-in and call-in patients. Plaintiff was also required to handle a significant amount of conversations via telephone. Due to these slightly different duties, the nurse assigned to the triage area spent "65 percent of the time ... at the desk." Ventry Aff., Ex. A at 188. Moreover, an RNI assigned to the clinic areas rather than the triage area would generally see ten patients a day. A triage area nurse, such as Plaintiff, only saw "one or two" patients a day. *Id.* at 190. Despite these changes, Plaintiff maintains that, although she could still perform the essential functions of the RNI position, she had difficulty with the physical demands of the position as a triage area RNI.

On May 10, 2000, Defendant Coney completed and signed a Performance Appraisal regarding Plaintiff. In this document, Co-

ney stated that Plaintiff "is a very conscientious worker, inspite [sic] of her physical condition she strives to achieve professionalism and efficiency." *See* Plaintiff's Ex. H.

In June 2000, the pain associated with Plaintiff's knee condition worsened and Plaintiff began another leave of absence. At some point after beginning her leave period, Plaintiff contacted Defendant Oakland to see if she could return to work. Plaintiff indicated that she wanted a position that required less standing than was required of a triage nurse.[2] Defendant Oakland advised Plaintiff no such positions were vacant at the Hempstead Community Health Center. Defendant Oakland further advised Plaintiff that she should contact the nursing office at the Nassau University Medical Center to ascertain whether they had any openings for registered nurses that required less standing than the triage nurse position.

On July 3, 2000, Plaintiff visited the human resources office at the Nassau University Medical Center. When an employee came out, Plaintiff asked whether there were "any jobs [that] they had available for a nurse that there would not be so much standing and walking." Ventry Aff., Ex. A at 316–317. Plaintiff also explicitly asked whether there were any openings for a registered nurse in the medical records department. *Id.* at 319. The employee, who Plaintiff identifies as non-party Barbara Cerqueria, "said something to the effect that we are so busy here, we don't have any work for nurses with one leg."[3] *Id.* at 317. Plaintiff states that this statement "was said lightly in [j]est." *Id.* It is undisputed that the employee also

---

2. Plaintiff's Rule 56.1(b) statement contends that Plaintiff also requested permission to utilize a cane at that specific time. *See* Plaintiff Rule 56.1(b) Statement ¶ 71. This contention, however, is unsupported by any of the evidentiary material provided to the Court.

3. The deposition testimony by Barbara Cerqueria disputes that this statement was ever made.

stated that she did not believe that there were any openings for RNI's that required little standing or walking. *Id.* at 319. However, the employee said that Plaintiff should check with the supervisor of the medical records department to determine whether there were any openings. *Id.* When Plaintiff went to the medical records department, she was told that there no positions available for a registered nurse in that department. *Id.* at 322.

On August 9, 2000, Plaintiff wrote a letter to Defendant Prochilo requesting a leave of absence. Specifically, Plaintiff said: "I do not know how long I will be unable to work. I would like to ask for leave without pay status." Ventry Aff., Ex. N. On August 21, 2000, Defendant Prochilo informed Plaintiff that her request for an indefinite leave of absence was denied.

Plaintiff filed a Charge of Discrimination with the EEOC on January 19, 2001. Subsequently, on May 18, 2001, the EEOC issued a "Dismissal and Notice of Rights" letter. On August 8, 2001, Plaintiff initiated this action by filing a complaint. The complaint alleged two counts: violation of the ADA and violation of New York State Executive Law Section 296 and 297. On April 30, 2003, the Court received the instant fully briefed motion for summary judgment.

C. Failure to Accommodate After March 24, 2000.

■ The ADA, 42 U.S.C. § 12101 et seq., prohibits covered employers from discriminating against an otherwise qualified employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "In order to make out a prima facie case under the ADA, [Plaintiff is] required to show (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [Defendants] had notice of [her] disability; (3) that with reasonable accommodation he could perform the essential functions of her position ... and (4) that the [Defendants] refused to make such accommodations." *Mitchell v. Washingtonville Central Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999). Assuming arguendo that Plaintiff was disabled under the relevant definition and that Defendants had notice of that disability, Plaintiff has still failed to proffer any facts that would allow a reasonable trier of fact to conclude that Defendants failed to reasonably accommodate her.

■ The undisputed facts show that Plaintiff requested two accommodations: an assignment that required less standing and walking than the triage nurse job and an indefinite leave of absence. With regard to the first requested accommodation, Plaintiff has the burden of establishing "that there was a vacant position into which [s]he could have been transferred pursuant to then-existing civil service rules whose duties [s]he could have performed." *Jackan v. New York State Dept. of Labor*, 205 F.3d 562, 566 (2d Cir.2000). Absent such an open position, the request was not reasonable. *See id.* Plaintiff has failed to proffer any evidence that such a vacant position existed. In fact, all of the proffered evidence indicates that no such vacant position existed. Plaintiff's factually unsupported argument that certain unnamed RNI employees held clerical positions fails to satisfy her bur-

den of establishing that an actual *vacant* position existed. The Court is also unpersuaded by Plaintiff's argument that Defendants failed to perform an adequate search for substitute position. *See* Plaintiff's Opp. Mem. at 16. The undisputed evidence indicates that Defendants promptly answered all of Plaintiff's inquiries. There is no argument that any of these answers were either false or misleading. On the basis of this argument, therefore, the proffered evidence would not allow a reasonable trier of fact to conclude that this requested transfer to a position without a vacancy constituted a reasonable accommodation. Thus, no genuine issue of material fact remains as to that specific claim.

■ Plaintiff's second requested accommodation is similarly unsupported by the evidence. As discussed *supra,* Plaintiff claims that the denial of the requested leave of absence constituted a failure to reasonably accommodate her disability. There is ample case law stating that the ADA does not require an employer to grant an employee an indefinite leave of absence. *See Mitchell,* 190 F.3d at 9; *see also Walton v. Mental Health Ass'n,* 168 F.3d 661, 671 (3d Cir.1999); *Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1004 (7th Cir.1998) ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759–60 (5th Cir.1996); *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir.1996); *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir. 1995). Plaintiff counters this case law by stating that:

> she was very anxious to return to continue working but was rebuffed at every turn by defendants. She only requested a leave of absence as a last resort; but was still hopeful of returning in short

order. To label her request as an indefinite one[ ] is not appropriate.

Plaintiff's Opp. Mem. at 18.

The Court has reviewed the evidentiary record. This evidence is wholly inconsistent with the argument advanced by Plaintiff in her opposition memorandum. For example, in Plaintiff's August 9, 2000, letter request for leave, Plaintiff stated the following: "I do not know how long I will be unable to work. I would like to ask for leave without pay status." Ventry Aff., Ex. N. Moreover, Plaintiff's own deposition testimony states that she had no idea how long her leave of absence would be. *See, e.g.,* Ventry Aff., Ex. A at 344 ("Q: Did you know at the time you wrote this letter on August 9, 2000[,] to Mrs Prochilo how long you were going to be out on leave for? A: No."). After review of the proffered evidence, it is undisputed that the leave requested on August 9, 2000, was for an indefinite period of leave. Plaintiff's conclusory arguments to the contrary in her opposition memorandum do not create a genuine issue of material fact with regard to this leave request.

As discussed *supra,* a request for an indefinite period of leave, without more, does not constitute a reasonable accommodation. Plaintiff, in the instant case, did not communicate any information that would indicate any imminent return to active work duty. In fact, all of the proffered evidence indicates that no return was imminent unless Defendants offered Plaintiff a non-existent clerical nursing vacancy. Accordingly, Plaintiff's request for an indefinite leave of absence was not, under these specific circumstances, reasonable. In light of the foregoing, summary judgment is also appropriate as to the claim that Defendants failed to accommodate her request for an indefinite period of leave. Thus, no reasonable interpretation of the proffered facts would allow Plaintiff to re-

cover for either of her timely claims for failure to accommodate.

### D. Claims Relating to Events Prior to March 24, 2000.

 As a prerequisite for filing the instant ADA action in federal court, Plaintiff was required to file a complaint with the Equal Employment Opportunity Commission ("EEOC") and receive a right-to-sue letter. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A,* 274 F.3d 683, 686 (2d Cir.2001); *Tewksbury v. Ottaway Newspapers,* 192 F.3d 322, 325 (2d Cir. 1999) (recognizing that the ADA subjects ADA claims to the same administrative exhaustion requirement as Title VII claims). "In New York, [Plaintiff] must [have] file[d] a charge with the EEOC within 300 days of the alleged unlawful act and [have] provide[d] notice of the circumstances and date of the charge."*Stuevecke v. New York Hosp. Medical Center of Queens,* No. 01–CV–326, 2003 WL 22019073, at *3 (E.D.N.Y. Aug. 26, 2003); *see* 42 U.S.C. § 2000e–5(e)(1). The Second Circuit has interpreted this EEOC filing requirement as a statute of limitations barring all claims arising from discrete acts which occurred outside of the 300–day period. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996). However, the Second Circuit has also acknowledged that the EEOC filing requirement does not act as an absolute bar. *See Boos v. Runyon,* 201 F.3d 178, 183 (2d Cir.2000). Rather, the filing requirement is subject to waiver "in appropriate circumstances." *Id.* With these observations in mind, the Court turns to the circumstances of the instant case.

 In the instant case, Plaintiff filed her EEOC complaint on January 19, 2001.

Therefore, events prior to March 24, 2000 (300 days prior)[4], are time-barred unless Plaintiff proffers a persuasive argument to the contrary. One such argument would be that the relevant events are not distinct but rather should be considered as portions of a continuing course of conduct. However, as stated by the Second Circuit:

> A continuing violation cannot be established merely because the claimant continues to feel the effects of the time-barred discriminatory act. Nor can an otherwise barred claim be rendered timely by the mere continuation of the claimant's employment. Rather the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.

*Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999). The Second Circuit has also allowed time barred claims to be considered when "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001). In the instant case, there are two factors evidencing the non-applicability of the continuing violation doctrine.

 First, as discussed *supra,* both the request for a clerical non-vacant position and the request for an indefinite leave were unreasonable. Thus, Plaintiff had no timely cognizable claim against Defendants. As discussed *supra,* "the commencement of the statute of limitations period may be delayed until the *last discriminatory act* in furtherance of it." *Cornwell,* 23 F.3d at 704 (emphasis added). Since no timely discriminatory act re-

---

**4.** The parties refer to the last day of the 300 day period as either March 25, 2000, or March 26, 2000. However, these two dates were a Saturday and a Sunday, respectively. As a Saturday or Sunday cannot comprise the final day of a time period, *see* Fed.R.Civ.P. 6(a), the Court considers March 24, 2000, a Friday, as the last day in the relevant period.

mains, the continuing violation doctrine cannot rescue the other allegations from the application of the time bar. To hold to the contrary would allow the allegation of time-barred claims that are not tethered to any timely claims. Such a holding would strip the time bar of its meaning.

■ Second, Plaintiff has failed to properly raise this theory in prior proceedings. In cases alleging a continuing violation, " 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it,' *as long as a continuing violation is alleged in the EEOC complaint* and the lawsuit." *Schapiro v. New York City Dept. of Health*, 25 Fed.Appx. 57, 60, 2002 WL 4575 (2d Cir.2002) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)) (emphasis added). The court has reviewed Plaintiff's EEOC complaint. *See* Ventry Aff., Ex. F. This EEOC complaint makes no mention of any continuing violation. Of course, the Court does not require Plaintiff to invoke any specific words, such as "continuing violation." However, upon review of the EEOC complaint, no reasonable interpretation of the allegations therein constitutes an allegation of a continuing violation. As such, the application of the continuing violation doctrine under these circumstances would not be appropriate.

Accordingly, in light of the reasons discussed above, the Court will not consider ADA allegations regarding events that occurred beyond the 300 day limitation provided in 42 U.S.C. § 2000e–5(e)(1).

E. Plaintiff's State Law Claims.

Plaintiff has also alleged a cause of action under New York law. The Court may exercise subject matter jurisdiction over those claims due to the supplemental jurisdiction provided by 28 U.S.C. § 1367(a). Nonetheless, due to the Court's decision *supra*, the Court declines to exercise such supplemental jurisdiction over those state law issues. *See* 28 U.S.C. § 1367(c)(3).

## II. CONCLUSIONS

In light of the foregoing, Defendants' summary judgment motion is GRANTED as to Plaintiff's ADA claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**