**Luis Alberto CHIARI, Plaintiff,**

v.

**NEW YORK RACING ASSOCIATION INC. and Local Union 3, I.B.E.W., Defendants.**

No. 12–CV–0598 (SJF)(AKT).

United States District Court, E.D. New York.

Sept. 16, 2013.

Luis Alberto Chiari, Centereach, NY, pro se.

Joseph A. Saccomano, Jr., Susanne Kantor, Jackson Lewis, LLP, White Plains, NY, Richard S. Brook, Patricia E. Palmeri, Law Office of Richard S. Brook, Mineola, NY, for Defendants.

## *ORDER*

FEUERSTEIN, District Judge.

On February 2, 2012, *pro se* plaintiff Luis Alberto Chiari ("plaintiff") commenced this action against defendant New York Racing Association ("NYRA"), alleging violations of his rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.,* the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.,* and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* [Docket Entry No. 1]. On February 16, 2012, the Court directed plaintiff to file the requisite right-to-sue notice with the Court by March 9, 2012 or the ADA claim would be dismissed. [Docket Entry No. 4]. NYRA filed its answer on May 11, 2012. [Docket Entry No. 12]. On or about July 23, 2012, plaintiff filed an amended complaint adding Local Union 3, I.B.E.W. (the "Union," together with NYRA, "defendants") as a defendant. [Docket Entry No. 31]. Plaintiff did not remove his ADA claim against NYRA from the amended complaint. NYRA filed its answer to plaintiff's amended complaint on July 30, 2012. [Docket Entry No. 33]. The Union filed its answer to plaintiff's amended complaint on September 12, 2012. [Docket Entry No. 45]. Following a period of discovery, both defendants moved for summary judgment on all claims. [Docket Entry Nos. 63, 76]. Now before the Court is the

Report and Recommendation of Magistrate Judge A. Kathleen Tomlinson dated August 14, 2013 (the "Report") recommending that the Court grant defendants' motions for summary judgment and dismiss plaintiff's claims in their entirety. [Docket Entry No. 96]. Plaintiff has filed objections to the Report ("Pl. Obj."). [Docket Entry No. 100]. For the reasons that follow, all objections are overruled, and the Court adopts Magistrate Judge Tomlinson's Report in its entirety.

## I. Standard of Review

■ Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. Fed.R.Civ.P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Frankel v. City of N.Y.,* Nos. 06 Civ. 5450, 07 Civ. 3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are made. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). To accept the report and recommendation of a magistrate judge on a dispositive matter to which no timely objection has been made, the district judge need only be satisfied that there is no clear error on the face of the record. *See* Fed. R.Civ.P. 72(b); *Johnson v. Goord,* 487 F.Supp.2d 377, 379 (S.D.N.Y.2007), *aff'd,* 305 Fed.Appx. 815 (2d Cir.2009); *Baptichon v. Nevada State Bank,* 304 F.Supp.2d 451, 453 (E.D.N.Y.2004), *aff'd,* 125 Fed. Appx. 374 (2d Cir.2005). Whether or not

proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

■ Although the objections to a report and recommendation of a pro se party should be accorded leniency, "even a *pro se* party's objections ... must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Servs.,* No. 06–CV–5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (internal quotation marks and citation omitted); *see also Walker v. Vaughan,* 216 F.Supp.2d 290, 292 (S.D.N.Y.2002).

## II. Plaintiff's Objections

### A. Violations of the ADA

■ Magistrate Judge Tomlinson has recommended dismissal of plaintiff's ADA claim, in part, because plaintiff failed to provide the required EEOC right-to-sue letter or any information regarding the reasons for such failure to obtain the right-to-sue letter. Report at 362–63. In his objection to this recommendation, plaintiff reiterates that he "exhausted all venues to obtain that letter" and attaches a "form application ... a document that Plaintiff forgot to include in the opposition documents." Pl. Obj. at 2, Ex. B.

In the absence of a compelling justification for plaintiff's failure to submit this document with his opposition papers, the Court declines to consider it now. *See Azkour v. Little Rest Twelve, Inc.,* No. 10 Civ. 4132, 2012 WL 1026730, at *2 (S.D.N.Y. Mar. 27, 2012) (internal quotation marks omitted) ("[C]ourts generally do not consider new evidence raised in objections to a magistrate judge's report

and recommendation absent a compelling justification for failure to present such evidence to the magistrate judge."). In any event, consideration of this new evidence would not compel a different result because plaintiff's ADA claim fails on the merits.

Magistrate Judge Tomlinson considered the merits of plaintiff's ADA claim and recommended it be dismissed because the "record is bereft of any support whatsoever that (i) NYRA had knowledge that Plaintiff had any type of disability; (ii) regarded Plaintiff as having any disability; or (iii) terminated Plaintiff based on any disability." Report at 364. In his objection to this recommendation, plaintiff submitted additional evidence—deposition testimony of Tania Ramirez that "anybody could see [plaintiff's rapidly deteriorating health]" and a document showing plaintiff received medical attention from February to May 2011. Pl. Obj. at 3, Ex. C. Even if the Court were to consider this newly submitted evidence, it does not cure plaintiff's insufficient showing that he was discharged from his employment with NYRA due to a disability. Therefore, plaintiff's objection is overruled.

### B. COBRA Violations

Magistrate Judge Tomlinson has recommended dismissal of plaintiff's claim that his rights under COBRA were violated because NYRA failed to notify him of those rights. Report at 366. In his objections to this recommendation, plaintiff repeats his allegations that he never received the COBRA documents by citing to evidence considered by Magistrate Judge Tomlinson in the Report, and reiterates that he felt pressured during his deposition to admit that he had received the COBRA documents. Pl. Obj. at 1–2.

Magistrate Judge Tomlinson properly declined to consider plaintiff's contention in his opposition papers that he never received the COBRA documents, which contradicted his sworn deposition testimony. Report at 365–66. As Magistrate Judge Tomlinson correctly noted, "[e]ven if the Court accepted all of the allegations in Plaintiff's opposition papers as true, there is nevertheless no material issue of fact sufficient to defeat summary judgment." Report at 366. The Court agrees that NYRA discharged its duty to notify plaintiff upon mailing the COBRA documents to plaintiff's address of record, and "Plaintiff does not contest that the COBRA notice was mailed, nor does Plaintiff point to any evidence in the record to contradict NYRA's assertion that the COBRA notice was mailed." Report at 366. Therefore, plaintiff's objection is overruled.

### C. Violations of the CBA and the Union's Breach of the Duty of Fair Representation

Magistrate Judge Tomlinson has recommended dismissal of Plaintiff's claims of CBA violations against NYRA and claims that the Union breached its duty of fair representation because Plaintiff failed to introduce evidence to support his claims that the Union breached its duty of fair representation. Report at 369. In his objection to this recommendation, plaintiff repeats his allegation that NYRA failed to notify the Union of his termination and that both defendants "acted in a careless and disdain manner in treating Mr. Chiari's termination." Pl. Obj. at 2–3.

The Court agrees that these two claims are to be considered together as a hybrid § 301/DFR claim. To establish a § 301/DFR claim, "a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached it duty of fair representation vis-a-vis the union members." Report at 368 (quoting *White v. White Rose Food,*

237 F.3d 174, 178–79 (2d Cir.2001)). As Magistrate Judge Tomlinson correctly noted, "even assuming NYRA's failure to notify the Union of Plaintiff's termination constitutes a breach of the CBA, Plaintiff's claim cannot survive summary judgment because ... Plaintiff has not introduced any evidence to support his claims that the Union breached its duty of fair representation." Report at 369. Therefore, plaintiff's objection is overruled.

### D. Remaining Objections

To the extent that plaintiff has raised objections not specifically addressed above, the Court has determined that they are either reiterations of his original arguments or are not sufficiently specific to trigger *de novo* review of Magistrate Judge Tomlinson's conclusions. The Court has reviewed the Report in its entirely and is satisfied that there is no clear error on the face of the record, and therefore any remaining objections are denied.

### III. Conclusion

For the foregoing reasons, Magistrate Judge Tomlinson's Report is adopted in its entirety as an order of the Court. Defendants' motions for summary judgment [Docket Entry Nos. 63, 76] are granted and plaintiff's claims are dismissed. The Clerk of Court is respectfully directed to close this case and, in accordance with Rule 5(b)(2)(C) and Rule 77(d) of the Federal Rules of Civil Procedure, serve a copy of this order upon the pro se plaintiff by mailing a copy of the order to his last known address.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

### I. PRELIMINARY STATEMENT

This litigation arises out of Plaintiff Luis Alberto Chiari's ("Plaintiff") former employment as a pari-mutuel clerk with the New York Racing Association ("NYRA") during which time he was a member of Local Union 3, I.B.E.W. (the "Union") (collectively, "Defendants"). The Plaintiff asserts claims for violations of his rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.*, the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12112 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq. See generally* Am. Compl. Both Defendants now move for summary judgment on all claims. DE 63, 76. Plaintiff opposes both motions. DE 68, 81. Judge Feuerstein has referred both motions to this Court for a Report and Recommendation. *See* Electronic Order, Nov. 26, 2013; Electronic Order, Dec. 26, 2013. Having considered the parties' submissions, including the counsels' Local Civil Rule 56.1 Statements, as well as the applicable case law, the Court recommends to Judge Feuerstein that both motions for summary judgment be GRANTED for the reasons that follow.

### II. BACKGROUND FACTS

The following facts are drawn from NYRA's Rule 56.1 Statement ("NYRA 56.1 Stmt.") [DE 64–1], the Union's Rule 56.1 Statement ("Union 56.1 Stmt."), declarations of the respective Defendant's counsel with exhibits attached to them, including copies of the parties' deposition transcripts, and Plaintiff's memoranda in opposition with attached exhibits. Relevant discrepancies in the evidence are noted. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir.2005).[1]

Defendant NYRA is a private, New York not-for-profit corporation organized as a racing association. NYRA 56.1 Stmt. ¶ 1. As a franchisee of the State of New York, NYRA is authorized to conduct Thoroughbred horse racing and pari-mutuel wagering. NYRA 56.1 Stmt. ¶ 2. NYRA operates three racetracks and pari-mutuel wagering facilities in New York State: (1) Aqueduct Racetrack in Queens County; (2) Belmont Park Racetrack in Nassau County; and (3) Saratoga Race Course in Saratoga County. NYRA 56.1 Stmt. ¶ 3. During the relevant time period, Plaintiff worked for NYRA as a pari-mutuel clerk. *See* NYRA 56.1 Stmt. ¶ 20; Union 56.1 Stmt. ¶ 1. The pari-mutuel clerks operate the tote machines where patrons place their bets on the various horse races. NYRA 56.1 Stmt. ¶ 5. The busiest time for pari-mutuel clerks occurs each year between July and September, when NYRA moves its operations to its Saratoga Race Course location. NYRA 56.1 Stmt. ¶ 16. While in Saratoga, pari-mutuel clerks sometimes work six days per week. NYRA 56.1 Stmt. ¶ 17.

Plaintiff started working for NYRA as a pari-mutuel clerk in or about the end of 2004. NYRA 56.1 Stmt. ¶ 20; Union 56.1 Stmt. ¶ 4. At that time, Plaintiff worked as an "extra" clerk on an "as-needed" basis. *Id.* Plaintiff became a member of the Un-

1. The Court notes that Plaintiff *pro se's* motion papers are procedurally defective on several grounds. Plaintiff has not submitted a Rule 56.1 Counter–Statement in violation of Local Rule 56.1. Rather, Plaintiff's memoranda in opposition sets forth numbered statements of facts, and Plaintiff sometimes cites to exhibits he has provided in opposition to Defendants' motions. *See* Pl.'s Mem. in Opp. to NYRA's Motion for Summ. J. ("Pl.'s NYRA Opp.") [DE 68] at 5–34. Plaintiff's opposition to NYRA's motion also includes numbered responses to NYRA's summary of its Rule 56.1 Statement, as set forth in NYRA's memorandum of law. *Id.* at 9–12. However, most of Plaintiff's factual statements contain very few citations to evidence in the record. Local Rule 56.1(d) provides that "[e]ach statement by the movant or opponent pursuant to Rule 56.1 ... must be followed by citation to evidence which would be admissible, set forth as required by Fed.R.Civ.P. 56(c)." Likewise, Federal Rule of Civil Procedure 56(c) provides that a party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

 (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

 (B) showing that the materials cited do not establish the absence or presence of a genu-

ine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c). (continued on page three)

Defendants complied with their obligations under Local Civil Rule 56.2, making Plaintiff aware of his obligations under the Rules by providing Plaintiff with a copy of the full texts of Federal Rule 56 and Local Civil Rule 56.1. *See* DE 64, 77.

"Although a plaintiff's failure to respond or contest the facts set forth in a Rule 56.1 statement generally constitutes an admission of those facts, '[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.'" *Soliman v. Daimler AG*, No. CV 10–408, 2011 WL 6945707, at *1 n. 2 (E.D.N.Y. Aug. 8, 2011) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001)); *see Viscusi v. Proctor & Gamble*, No. 05–CV–01528, 2007 WL 2071546, at *9 n. 1 (E.D.N.Y. July 16, 2007) (exercising discretion to not deem admitted defendant's unchallenged statement of undisputed facts given plaintiff's *pro se* status). In light of Plaintiff's *pro se* status, the Court will overlook the defects in Plaintiff's filing and "will deem admitted only those facts that are supported by admissible evidence and not controverted by other admissible evidence in the record." *Roman v. Nat'l Sec. Agency*, No. 07CV4502, 2009 WL 303686, at *2 n. 1 (E.D.N.Y. Feb. 9, 2009); *see Soliman*, 2011 WL 6945707, at *1 n. 2.

ion and a "regular" NYRA pari-mutuel clerk in June 2005. NYRA 56.1 Stmt. ¶ 21; Union 56.1 Stmt. ¶ 5; Pl.'s Mem. of Law in Opp. to the Union's Mot. for Summ. J. ("Pl.'s Union Opp.") [DE 81] at 2. Plaintiff worked for NYRA at Belmont Park and the Saratoga Race Course. NYRA 56.1 Stmt. ¶ 22.

Prior to working for NYRA, since the 1980s, Plaintiff was employed in New York for various horse trainers and/or stable owners as an exercise rider. NYRA 56.1 Stmt. ¶ 25. During this time period, Plaintiff went to Florida each winter during the "breaking season" to work for various racing stables. NYRA 56.1 Stmt. ¶¶ 26–27. At the end of the "breaking season," Plaintiff often went to Kentucky to work for various companies which sell horses. NYRA 56.1 Stmt. ¶ 27. Plaintiff notes that prior to his employment with NYRA, he also worked at a recycling plant in Brooklyn. Pl.'s NYRA Opp. at 10.

While employed with NYRA as a pari-mutuel clerk, Plaintiff also separately worked for independent horse trainers at NYRA facilities as an exercise rider in the mornings, prior to his 11:30 a.m. report time for his pari-mutuel clerk position.[2] NYRA 56.1 Stmt. ¶ 28; Pl.'s NYRA Opp. at 10. For a period of time, Plaintiff also owned his own horse and was self-employed as a trainer. NYRA 56.1 Stmt. ¶ 29. Likewise, he also worked for a time as a security guard for NYRA at Belmont and Aqueduct. Pl.'s NYRA Opp. at 10. During his employment with NYRA, Plaintiff lived with his sister at 80 Third Avenue, Lindenhurst, New York and supplied that address as his address for NYRA's records. NYRA 56.1 Stmt. ¶¶ 23–24.

The terms and conditions of employment for pari-mutuel clerks are governed by a collective bargaining agreement ("CBA") between NYRA and the Union. NYRA 56.1 Stmt. ¶ 6; CBA, attached as Exhibit K to the Affirmation of Joseph A. Saccomano, Jr., Esq. in Support of Defendant NYRA's Mot. for Summ. J. "(Saccomano Aff.") [DE 67]; Union 56.1 Stmt. ¶ 2; Pl.'s Union Opp. at 2. The CBA contains a leave of absence policy wherein a Union employee may request in writing a long term or short term leave of absence. NYRA 56.1 Stmt. ¶ 7; Saccomano Aff., Ex. K; Pl.'s Union Opp. at 2. When an employee requests a leave of absence, he or she is given a Mutuel Department "Leave of Absence" form to complete ("LOA Request Form"). NYRA 56.1 Stmt. ¶ 8; LOA Request Form, attached as Ex. L to the Saccomano Aff. The form is then submitted to the head of the Pari–Mutuel Department for signature. *Id.* If the leave of absence is approved, the completed LOA Request Form is sent to the Union for signature, and then returned to the Pari–Mutuel Department for filing. NYRA 56.1 Stmt. ¶ 9.

The LOA Request Form specifically states that all medical, group life insurance and disability insurance cease during the leave of absence. NYRA 56.1 Stmt. ¶ 9; Saccomano Aff. Ex. L. Under the terms of the CBA, any Union employee who fails for any reason (other than illness) to return to work within three racing days after the expiration of the leave shall have his or her employment automatically terminated. NYRA 56.1 Stmt. ¶ 11. Plaintiff notes that the CBA allows for such termination "provided that the Employer shall have notified the Union of any such absence three (3) days prior to any termination." Pl.'s Opp. at 10; *see* Saccomano Aff. Ex. L.

---

**2.** In addition to employees who work for NYRA, there are other individuals, such as horse trainers and their staff, who work at NYRA facilities but are not NYRA employees. NYRA 56.1 Stmt. ¶ 18.

The CBA also contains a grievance procedure for employees to utilize through their Union representation if they wish to grieve a decision affecting terms and conditions of their employment. NYRA 56.1 Stmt. ¶ 12; Saccomano Aff. Ex. K, pp. 17–18; Union 56.1 Stmt. ¶ 3; Pl.'s Union Opp. at 2. During the relevant time period, Sal Zammitto was the Union Shop Steward and Chairman of the Division of Mutuel Employees Unit at NYRA. NYRA 56.1 Stmt. ¶ 13; Union 56.1 Stmt. ¶ 6; Pl.'s Union Opp. at 2.

Plaintiff requested and was granted a short-term personal leave of absence from November 7, 2010 through March 15, 2011, pursuant to the terms of the CBA. NYRA 56.1 Stmt. ¶ 33; Union 56.1 Stmt. ¶ 7; Pl.'s NYRA Opp. at 5. Prior to taking his leave of absence, Plaintiff signed the LOA Request Form in late October 2010 or November 2010. NYRA 56.1 Stmt. ¶ 35. Plaintiff went to Florida during his leave of absence to assist with bringing his mother to live with one of his brothers in Orlando. NYRA 56.1 Stmt. ¶ 36. Plaintiff also maintains that the leave of absence was necessary to cope with his father's recent death and the stress resulting therefrom, as well as to assist with his mother's medical care in Florida. Pl.'s NYRA Opp. at 5; Pl.'s Union Opp. at 2.

On or about November 20, 2010, while on approved personal leave from NYRA, Plaintiff took a job working for trainer Tom Proctor ("Mr. Proctor") at the Gulfstream Park racetrack in Fort Lauderdale, Florida. NYRA 56.1 Stmt. ¶ 38. Plaintiff obtained medical benefits through his employment with Gulfstream. NYRA 56.1 Stmt. ¶ 29; see Pl.'s NYRA Opp. at 11. While working for Mr. Proctor, Plaintiff lived at the racetrack and would occasionally drive to Orlando to assist with taking his mother to doctor appointments.

NYRA 56.1 Stmt. ¶¶ 40–41; Pl.'s NYRA Opp. at 11.

While in Florida, Plaintiff's Union Shop Steward, Sal Zammitto, called Plaintiff regarding the necessity of filling out another LOA Request Form, since the first form might have been misplaced. NYRA 56.1 Stmt. ¶ 42; Union 56.1 Stmt. ¶ 8. In January 2011, another copy of the LOA Request Form was faxed to Plaintiff at the Gulfstream Park racetrack office. NYRA 56.1 Stmt. ¶ 43; see Union 56.1 Stmt. ¶ 9. On or about January 14, 2011, Plaintiff filled out the replacement LOA Request Form and faxed the form back to the Union. Union 56.1 Stmt. ¶ 2; see NYRA 56.1 Stmt. ¶ 44; Pl.'s NYRA Opp. at 5. The replacement form included the same dates of leave as the original LOA Request Form, November 7, 2010 through March 15, 2011. NYRA 56.1 Stmt. ¶ 44.

Plaintiff's benefits with NYRA ended effective December 31, 2010 as a result of Plaintiff not working the requisite number of hours set forth in the CBA. NYRA 56.1 Stmt. ¶ 73; see Saccomano Aff. Ex. K at 3; see also Response of David Smukler to deposition question No. 5, annexed as Ex. I to the Saccomano Aff. Plaintiff was sent a notice of his COBRA rights by NYRA's COBRA administrator, ADP Benefit Services. NYRA 56.1 Stmt. ¶ 74; see Response of David Smukler to deposition question No. 5; see also copy of January 6, 2011 COBRA notice, annexed as Ex. O to the Saccomano Aff. The COBRA notice, dated January 6, 2011, was sent to Plaintiff's address of record, namely, 80 Third Avenue, Lindenhurst, New York. NYRA 56.1 Stmt. ¶ 75; Saccomano Aff. Ex. O; Pl.'s NYRA Opp. at 5. Pursuant to the COBRA notice, Plaintiff had until March 7, 2011 to elect continuation coverage. Saccomano Aff. Ex. O. NYRA contends that Plaintiff's sister gave Plaintiff the COBRA package documents when he came back to

New York from Kentucky. NYRA 56.1 Stmt. ¶ 76. In his opposition papers, Plaintiff maintains that the COBRA documents never arrived at his sister's residence, and that he never received them. Pl.'s NYRA Opp. at 5, ¶ 5; Letter of Martha Ortega dated November 5, 2012, attached as Ex. J to Pl.'s NYRA Opp. Plaintiff asserts that he came across the NYRA 2010 medical benefits package given to mutual employees while cleaning a storage room with his wife in Kentucky. Pl.'s NYRA Opp. at 12. According to the Plaintiff, he "admitted under constant pressure from Defendant that he received the COBRA documents, a document that he obtained from his storage room in Kentucky on his way back to New York, and after his termination from Defendant NYRA." Id. at 13.

In the Fall of 2010, after his father's death, Plaintiff and his mother went to Florida to stay with his brother because of his mother's ill health as well as his own. Transcript of the July 24, 2012 Deposition of Alberto Luis Chiari, annexed as Ex. G to the Saccomano Aff. ("Chiari Dep."), at 98–101. Plaintiff looked for a job in Orlando at that time because he had no benefits and was without his regular medication. Id. at 101. When he could not find work, he called a contact in Kentucky who advised that a Mr. Tom Proctor was looking for a good rider in Ft. Lauderdale. Id. Plaintiff contacted Proctor who eventually hired him to work at his racing stables during the racing season at Gulfstream Park and Plaintiff was able to receive medical benefits. Id. at 102.

Plaintiff worked for Mr. Proctor in Florida from November 2010 until March 26, 2011. NYRA 56.1 Stmt. ¶ 45; Chiari Dep. at 102–103. Plaintiff did not return to work for NYRA by the March 15, 2011 leave deadline. NYRA 56.1 Stmt. ¶ 46; see Union 56.1 Stmt. ¶ 10; see Pl.'s NYRA Opp. at 6. Instead, Plaintiff called Tara

Poepplein ("Ms. Poepplein"), the assignment manager for NYRA, to request an extension of his March 15, 2011 return date. NYRA 56.1 Stmt. ¶ 47; Union 56.1 Stmt. ¶ 11; see Pl.'s NYRA Opp. at 6. Ms. Poepplein told Plaintiff that he needed to return to work by the Wood Memorial, one of the first major races during the New York racing season. NYRA 56.1 Stmt. ¶ 48. Plaintiff agreed that he would return to work no later than April 10, 2011. NYRA 56.1 Stmt. ¶ 49; see Pl.'s NYRA Opp. at 6.

Plaintiff did not return to work on April 10, 2011. NYRA 56.1 Stmt. ¶ 50; Union 56.1 Stmt. ¶ 13. Plaintiff did not call anyone at NYRA regarding his failure to return to work by the April 10, 2011 extended return to work date. NYRA 56.1 Stmt. ¶ 51. Neither did Plaintiff contact Ms. Poepplein or his Union representatives. NYRA 56.1 Stmt. ¶ 52. Instead, Plaintiff sent an email to Charles Hayward ("Mr. Hayward"), then CEO of NYRA, requesting a second extension of his leave. NYRA 56.1 Stmt. ¶ 52; see Pl.'s NYRA Opp. at 6; Chiari Dep. at 105. Plaintiff admitted it was his mistake to email Mr. Hayward rather than contact the Union or Ms. Poepplein. NYRA 56.1 Stmt. ¶ 56; Chiari Dep. at 107. Plaintiff's email to Mr. Hayward was sent after the extended deadline had already expired. NYRA 56.1 Stmt. ¶ 53; Chiari Dep. at 107.

Mr. Hayward forwarded Plaintiff's email to David Smukler ("Mr. Smukler"), Senior Vice President of Human Resources and Labor Relations for NYRA. NYRA 56.1 Stmt. ¶ 54. Mr. Smukler responded to Plaintiff, in relevant part:

As you know, you were required to return to work on the scheduled return date of March 15, 2011, and failed to do so. You also failed to notify NYRA that you wouldn't be returning before that date. Moreover, after the Assignment

Room called you last week, you promised that you would try to return in time for The Wood Memorial on Saturday, but definitely on Sunday, April 10th, and again you failed to show up for work. Making no further attempt to contact your department, instead you sent Mr. Hayward an email yesterday afternoon. In view of the above circumstances, your request for an extension is not granted, and your employment with the New York Racing Association is terminated, effective immediately. Please understand that our decision in this matter is final.

NYRA 56.1 Stmt. ¶ 55; Email of April 14, 2011 from Mr. Smukler to Plaintiff, attached as Ex. M to the Saccomano Aff.; *see* Pl.'s NYRA Opp. at 6.

After he received Mr. Smukler's email, Plaintiff went to work for Mr. Proctor in Kentucky, where his ex-wife and children reside, from April through July 2011. NYRA 56.1 Stmt. ¶¶ 57–58; Chiari Dep. at 110; *see* Union 56.1 Stmt. ¶ 15; *see* Pl.'s Opp. at 7. NYRA contends that after receiving Mr. Smukler's email, Plaintiff did not contact anyone at NYRA regarding his job until he returned to New York in July 2011. NYRA 56.1 Stmt. ¶ 60. Plaintiff states that on April 18, 2011, he responded to Mr. Smukler, requesting reconsideration of the decision to terminate his employment, but that Mr. Smukler never responded. *See* Pl.'s NYRA Opp. at 7; Email of Apr. 18, 2011 from Plaintiff to Mr. Smukler, attached as Ex. K to Pl.'s NYRA Opp. Plaintiff contends that he never received a formal letter terminating his employment. Pl.'s NYRA Opp. at 7.

When Plaintiff returned to New York in mid-July 2011, he went to see his Union Shop Steward, Sal Zammitto, to discuss his termination. NYRA 56.1 Stmt. ¶ 63;

Chiari Dep. at 125; Union 56.1 Stmt. ¶ 17. On July 22, 2011, Zammitto requested a meeting with Bonnie Parente, NYRA's Director of Human Resources. NYRA 56.1 Stmt. ¶ 64; Union 56.1 Stmt. ¶ 18; *see* Pl.'s NYRA Opp. at 7. Shortly thereafter, Plaintiff met with Zammitto and Parente. *See* NYRA 56.1 Stmt. ¶¶ 64–65; *see* Chiari Dep. at 126; *see also* Pl.'s NYRA Opp. at 7.[3] During the meeting, NYRA contends that Parente told Plaintiff that his employment was terminated because he failed to return from a leave of absence. NYRA 56.1 Stmt. ¶ 65. Plaintiff maintains that Parente left the issue of Plaintiff's termination "open," and promised him that she would review the case with NYRA and the Union representative. *See* Pl.'s NYRA Opp. at 8, 12.

Subsequent to the meeting of July 23, 2011, Bonnie Parente had further conversations with Sal Zammitto and with Robert Olenick, business representative for the Union. NYRA 56.1 Stmt. ¶ 66; *see* Response of Bonnie Parente to deposition questions Nos. 3 and 6, annexed as Ex. J to the Saccomano Aff. During these conversations, Parente explained to the Union that Plaintiff's employment was terminated because he failed to return from leave. NYRA 56.1 Stmt. ¶ 67. Plaintiff maintains that he contacted Zammitto multiple times after the meeting with Parente, and that he was repeatedly told that "we are working hard on it." *See* Pl.'s NYRA Opp. at 8.

On or about August 5, 2011, the Union sent NYRA a grievance letter stating that the Union "considers the termination of Luis Chiari to be unjust. The notice shall serve as the First Step in the grievance procedure, as per our Collective Bargaining Agreement." NYRA 56.1 Stmt. ¶ 69; Letter of Aug. 5, 2011 from Sal Zammitto

---

**3.** NYRA and the Union contend in their 56.1 Statements that this meeting occurred on July 23, 2013, however, Plaintiff in his deposition contends that the meeting took place on August 2, 2103. Chiari Dep. at 143:9–14.

to Patrick Mahony, annexed as Ex. N to the Saccomano Aff.; Union 56.1 Stmt. ¶ 19; Pl.'s NYRA Opp. at 8. Zammitto told Plaintiff that the Union attorneys would bring up the issue of getting Plaintiff's job back at their next meeting with the NYRA in October 2011, during the contract negotiations for a new collective bargaining agreement. NYRA 56.1 Stmt. ¶ 70. In October 2011, after the meeting with NYRA, Zammitto told Plaintiff that "they could do nothing more with [his] case, that NYRA will stand with the position of termination." NYRA 56.1 Stmt. ¶ 71; *see* Pl.'s Union Opp. at 4. Plaintiff claims that Ellen Pavelka[4] ("Ms. Pavelka"), a mutual clerk employee and a member of the advisory board for the Union, was present at the October 2011 Union meeting with the NYRA. Pl.'s NYRA Opp. at 9. Plaintiff maintains that Ms. Pavelka informed Plaintiff that the issue of his termination was never discussed during the October 2011 meeting. *Id.* On July 3, 2012, the Union filed a demand for arbitration. NYRA 56.1 Stmt. ¶ 72; *see* Union 56.1 Stmt. ¶ 20; Pl.'s Union Opp. at 3.

Even after Plaintiff ceased working for NYRA, Plaintiff maintained his credentials and continued to work for horse trainers as an exercise rider. NYRA 56.1 Stmt. ¶ 30; Chiari Dep. at 127. However, because of a horse riding accident while working for a trainer in April 2012, Plaintiff has been unable to work, and is currently receiving benefits through Worker's Compensation for this accident. NYRA 56.1 Stmt. ¶¶ 31–32; Chiari Dep. at 13, 52; Pl.'s NYRA Opp. at 10.

### III. Procedural History

On February 2, 2012, Plaintiff filed a Complaint against NYRA. *See* Compl. [DE 1]; NYRA 56.1 Stmt. ¶ 77; Union 56.1 Stmt. ¶ 21; Pl.'s NYRA Opp. at 9. Plaintiff set forth four causes of action in his Complaint: (1) NYRA's "termination of Plaintiff's employment and discontinuance of . . . medical benefits was a violation of the terms and conditions of Plaintiff's employment with [NYRA]" ("First Cause of Action"); (2) violation of Plaintiff's rights under COBRA ("Second Cause of Action"); (3) violations of the ADA ("Third Cause of Action"); and (4) "violation of the terms and conditions of the [CBA] between [the] [U]nion and [NYRA]" ("Fourth Cause of Action"). *See* Compl.; NYRA 56.1 Stmt. ¶ 77.

On February 16, 2011, Judge Feuerstein issued an order dismissing Plaintiff's ADA cause of action, without prejudice, because Plaintiff had neither alleged nor produced supporting documents to satisfy the statutory prerequisites for filing such a claim, *i.e.*, Plaintiff did not produce a notice of right-to-sue from the Equal Employment Opportunity Commission ("EEOC") prior to instituting this lawsuit. DE 4; NYRA 56.1 Stmt. ¶ 79; Union 56.1 Stmt. ¶ 22. Judge Feuerstein directed Plaintiff to file the right-to-sue notice with the Court by March 9, 2012 or Plaintiff's ADA claim would be dismissed. DE 4; NYRA 56.1 Stmt. ¶ 80; Union 56.1 Stmt. ¶ 23. Plaintiff has not obtained the right-to-sue notice from the EEOC. NYRA 56.1 Stmt. ¶ 81; Union 56.1 Stmt. ¶ 24; Pl.'s NYRA Opp. at 9. Plaintiff contends that he contacted the EEOC "in search of information related to the right to sue notice" but "could not obtain the right information at the time." Pl.'s NYRA Opp. at 9, 12.

NYRA filed its Answer to Plaintiff's Complaint on May 11, 2012. DE 12. On

---

4. Plaintiff also refers to "Ms. Pavelka" as "Ms. Paleska." *See* Chiari Dep. at 85, 119. The Court is not aware of the correct spelling of this individual's name, however, for the purposes of this Report and Recommendation, the Court will refer to her as "Ms. Pavelka."

or about July 23, 2012, pursuant to stipulation [DE 30], Plaintiff filed an Amended Complaint, adding the Union as a defendant as well as a a "Fifth Cause of Action" against the Union only for breach of the duty of fair representation. *See* Am. Compl. [DE 31].[5] Plaintiff's claims against NYRA remained unchanged; Plaintiff did not remove his ADA claim from the Amended Complaint. *See id.* Defendant NYRA filed its Answer to Plaintiff's Amended Complaint on July 30, 2012. DE 33. The Union filed its Answer to Plaintiff's Amended Complaint on September 12, 2012. DE 45. After a period of discovery, the present motions followed. DE 63, 76. Plaintiff opposes both motions.[6] DE 68, 81

On or about March 18, 2013, Plaintiff filed a letter with the Court seeking to have further material filed in conjunction with his opposition to Defendants' motions for summary judgment. DE 84. The Court directed Plaintiff to make a motion on notice to opposing counsel regarding the additional material. DE 85. On or about April 8, 2013, Plaintiff filed a "Motion to Compel Discovery," requesting, among other things, that he be permitted to introduce a transcript of the first arbitration hearing regarding Plaintiff's termination, which was held on January 14, 2013. DE 87. NYRA opposed the motion. DE 88. The Court permitted Plaintiff to introduce the arbitration transcript as a supplement to his opposition to Defendants' motions for summary judgment, noting that the arbitration transcript was not available to Plaintiff previously. DE 90.

Specifically, the Court directed Plaintiff to submit a supplemental memorandum stating what specific testimony from the arbitration supports his arguments. *Id.* The Court also granted Defendants the opportunity to provide their own supplemental reply. *Id.* On or about June 27, 2013, Plaintiff submitted his supplemental opposition. DE 92. NYRA filed a supplemental reply in support on July 8, 2013. DE 93. The Union did not file any response to Plaintiff's supplemental opposition. All of the motions are now ripe for review.

## IV. STANDARD OF REVIEW

Fed.R.Civ.P. 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n,* 498 F.3d 152, 155 (2d Cir.2007); *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir.2005).

Where the movant shows a prima facie entitlement to summary judgment, "the

---

5. On September 5, 2012, the parties filed a stipulation regarding an amendment to the Ad Damnum clause of the Amended Complaint. *See* Stipulation Regarding Amended/Corrected Complaint [DE 42]. The stipulation increased Plaintiff's alleged damages from $250,000 to $667,600.50. *See id.* The Court "so ordered" the stipulation on September 7, 2012, *see* DE 44.

6. On November 14, 2012, the Plaintiff moved for a two-week extension of time to file his opposition to NYRA's motion for summary judgment, from November 5, 2012 to November 14, 2012. DE 59. That motion was unopposed. The Court is GRANTING Plaintiff's request.

burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.; see McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Dobbs v. Dobbs,* No. 06–CV–6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

■ "When the party opposing summary judgment is *pro se,* the Court must read that party's papers liberally and interpret them 'to raise the strongest arguments that they suggest.' " *Ayazi v. United Fed'n of Teachers, Local 2,* 2011 WL 888053, at *6 (E.D.N.Y. Mar. 14, 2011) (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999)). "[H]owever, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Ayazi,* 2011 WL 888053, at *6 (citing *Thompson v. Tracy,* No. 00 CV

8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan. 17, 2008)).

## V. DISCUSSION

With the foregoing principles in mind, the Court now turns to each of Plaintiff's causes of action.

### A. Violations of the ADA

#### 1. Judge Feuerstein's Dismissal of Plaintiff's ADA Claims

As noted, Judge Feuerstein previously dismissed Plaintiff's ADA cause of action, without prejudice, unless Plaintiff filed the required EEOC notice by March 9, 2012. *See* DE 4. Plaintiff has never provided the required EEOC notice. NYRA argues that because Plaintiff has never filed the EEOC notice, his ADA claim has been dismissed. Mem. of Law in Support of NYRA's Mot. for Summ. J. ("NYRA Mem."). Plaintiff argues that he has tried on different occasions to obtain the EEOC right-to-sue letter but has been unable to do so, and that his ADA cause of action should not be deemed dismissed. Pl.'s NYRA Opp. at 12. The alleged disability asserted by Plaintiff in support of his ADA claims is Attention Deficit Hyperactivity Disorder. NYRA 56.1 Stmt. ¶¶ 78. Plaintiff also appears to assert that he suffers from heart problems. Pl.'s NYRA Opp. at 4.

■ The Court first notes that, under the "law-of-the-case doctrine, a court has discretion to re-examine an issue in certain circumstances." *Pub. Emps. Ret. Ass'n of N.M. v. PriceWaterhouseCoopers LLP,* Fed.Appx. 742, 744 (2d Cir.2009). However, courts are "understandably reluctant" to reconsider a ruling once made, "especially when one judge or court is asked to consider the ruling of a different judge." *Ali v. Mukasey,* 529 F.3d 478, 490 (2d Cir.2008). A court's decision whether to apply law-of-the-case is "informed prin-

cipally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir.1999) (internal quotation marks omitted). With regard to law-of-the-case doctrine, the Second Circuit has noted that

> [t]he law of the case doctrine ... while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 547 F.3d 109, 112 n. 3 (2d Cir.2008) (citing *Ali*, 529 F.3d at 490). The law of the case will be disregarded "only when the court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (quoting *Zdanok v. Glidden*, 327 F.2d 944, 953 (2d Cir.1964)).

 Based on the foregoing principles, the Court has no "conviction of error" which would warrant disturbing Judge Feuerstein's prior ruling dismissing Plaintiff's ADA claim. Moreover, even if this Court examines Plaintiff's claim on the merits, Plaintiff's ADA claim still fails as a matter of law.

### 2. Plaintiff Has Not Submitted an EEOC Right–to–Sue Letter

In general, filing a discrimination complaint and obtaining a right-to-sue letter from the EEOC is a statutory prerequisite to suit under the ADA. 42 U.S.C. §§ 2000e–5(e)(1), 12117(a); *see Grey v. Promenade Rehab. and Care Ctr.*, 145 Fed.Appx. 705 (2d Cir.2005) (upholding district court's ruling dismissing plaintiff's complaint *sua sponte* where no EEOC right-to-sue letter was filed); *Floyd v. Lord & Taylor*, 96 Fed.Appx. 792, 793 (2d Cir.2004) (upholding dismissal of complaint where plaintiff failed to submit any documentation showing that she had filed a complaint with the EEOC, a "prerequisite to bringing suit in federal court under the ... ADA"); *Zerilli–Edelglass v. N.Y.C Transit Auth.*, 333 F.3d 74, 76–77 (2d Cir. 2003) (upholding district court's ruling dismissing plaintiff's ADA claims where plaintiff did not file a grievance with the EEOC and did not obtain a right-to-sue letter); *Alarcon v. Nassau Cnty. Parks*, No. 12–CV–5922, 2013 WL 685891, at *2 (E.D.N.Y. Feb. 24, 2013) ("Individuals may bring ... ADA claims in federal court only after filing a timely charge of discrimination ... and obtaining a notice of right to sue letter from the EEOC"). Plaintiff has not provided the required right-to-sue letter, and as such, his ADA claim may be dismissed on that basis.

 The Court notes, however, that even where a right-to-sue letter has not been filed, in certain circumstances, "administrative exhaustion requirements may be waived to serve equity." *Grey*, 145 Fed.Appx. at 707; *see Negron v. City of N.Y.*, No. 10 CV 2757, 2011 WL 4737068, at *5 (E.D.N.Y. Sept. 14, 2011) ("A plaintiff's failure to obtain a 'right to sue' letter can be waived by the parties or the Court.") (citing *Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir.1999)); *Wisneski v. Nassau Health Care Corp.*, 296 F.Supp.2d 367, 375 (E.D.N.Y.2003) ("[T]he Second Circuit has also acknowledged that the EEOC filing requirement does not act as an absolute bar ... [r]ather, the filing requirement is subject to waiver 'in appropriate circumstances.'") (citing *Boos v. Runyon*, 201 F.3d 178, 183 (2d Cir.2000)). "For the Court to waive a plaintiff's failure to obtain a 'right to sue'

letter, 'the plaintiff must show or allege that he made an effort to procure the right to sue letter or that he raised the failure to issue a right to sue letter with the EEOC.' " *Negron,* 2011 WL 4737068, at *5 (quoting *Canty v. Wackenhut Corr. Corp.,* 255 F.Supp.2d 113, 117 (E.D.N.Y.2003)); *see also Pietras,* 180 F.3d at 474 (finding that the district court did not abuse its discretion by excusing plaintiff's failure to obtain a "right to sue" letter where plaintiff made a "diligent effort" to obtain the letter from the EEOC and was denied on the erroneous basis that she was not an employee); *Gonzalez v. City of N.Y.,* 354 F.Supp.2d 327, 332 n. 12 (S.D.N.Y.2005) ("In light of plaintiffs' allegation that Rivera twice attempted to obtain a right-to-sue letter, the Court finds that his failure to produce one does not bar him from filing this lawsuit."). However, at least one court in this district has indicated that a "diligent effort" on the part of a plaintiff is not all that is required to waive the statutory requirement of obtaining a right-to-sue letter. *See Wiercinski v. Mangia 57, Inc.,* No. 09 Civ. 4413, 2012 WL 2319142, at *7 (E.D.N.Y. June 19, 2012) ("[T]he view most consistent with the Second Circuit's decision in *Pietras* is that some extraordinary event such as an error by the EEOC in addition to mere diligence by a plaintiff is required to justify an equitable modification of the statutory requirement.").

 In this case, the only information available to the Court is that Plaintiff has tried on different occasions to obtain a right-to-sue letter, but has been unable to do so. Pl.'s NYRA Opp. at 12. The Court has not been provided any information (*e.g.,* letters, faxes, emails etc. to show any contact with the EEOC for this purpose) regarding the reasons for Plaintiff's failure to obtain the right-to-sue letter. In any case, for the following reasons, even if this

Court had some substantive basis to recommend a waiver of the requirement that Plaintiff submit a right-to-sue letter, Plaintiff's ADA claims otherwise fail as a matter of law.

### 3. *Plaintiffs ADA Claims Cannot Survive Summary Judgment*

As noted, the alleged disability asserted by Plaintiff in support of his ADA claims is Attention Deficit Hyperactivity Disorder. NYRA 56.1 Stmt. ¶¶ 78. Plaintiff also appears to assert that he suffers from heart problems. Pl.'s NYRA Opp. at 4; Chiari Dep. 49:6–24. NYRA argues that it had no knowledge of Plaintiff's disability, and never regarded Plaintiff as an individual with a disability. NYRA Mem. at 10–11. Therefore, NYRA maintains that it could not have terminated Plaintiff's employment based on his alleged disability. *Id.*

In general, the ADA prohibits discharge of an employee based on disability. *Giordano v. City of N.Y.,* 274 F.3d 740, 747 (2d Cir.2001) (citing 42 U.S.C. § 12112(a)). To establish a *prima facie* case under the ADA, Plaintiff must show that: (1) his employer is subject to the ADA; (2) Plaintiff was disabled within the meaning of the ADA; (3) Plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) Plaintiff was discharged due to his disability. *See id.* at 747; *Heyman v. Queens Vill. Comm. for Mental Health,* 198 F.3d 68, 72 (2d Cir.1999) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir.1998)); *McMillan v. City of N.Y.,* 711 F.3d 120, 125–26 (2d Cir.2013). Even assuming that Plaintiff meets the first three prongs of the analysis, Plaintiff has not made a showing sufficient to establish the existence of the fourth prong.

 According to Plaintiff's own testimony, Plaintiff never told anyone at

NYRA that he had a disability or had been diagnosed with ADHD. Chiari Dep. 49:22–50:13. Nor is there any evidence in the record that Plaintiff provided NYRA with any information regarding his heart condition. Plaintiff further confirms that he never provided NYRA with any of his medical records. Chiari Dep. 130:20–131:25; Pl.'s NYRA Opp. at 14 ("Plaintiff did not send his medical record ... because he considers this irrelevant at the time."). Although direct evidence of discriminatory motive is not necessary, Plaintiff must produce at least some circumstantial evidence that shows discriminatory animus. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) (noting that, because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial evidence, and that plaintiff must provide "more than conclusory allegations of discrimination"); *Dister v. Cont'l Grp., Inc.,* 859 F.2d 1108 (2d Cir.1988) (stating that even where a *prima facie* case is established, conclusory assertions of discrimination are insufficient to create an issue of material fact as to pretext). The record is bereft of any support whatsoever that (i) NYRA had knowledge that Plaintiff had any type of disability; (ii) regarded Plaintiff as having any disability; or (iii) terminated Plaintiff based on any disability. Therefore, Plaintiff has not made a showing sufficient to establish that he was discharged from his employment with NYRA due to a disability. Thus, the Court recommends to Judge Feuerstein that NYRA's motion for summary judgment be granted with respect to Plaintiff's ADA claims and those claims be dismissed, with prejudice. *See, e.g., Volmar v. Cold Spring Hills Ctr. for Nursing and Rehab.,* 395 Fed.Appx. 795, 796 (2d Cir.2010) (affirming dismissal of plaintiff's state and federal disability discrimination claims

where the plaintiff did not "adduce evidence raising a material issue of fact regarding defendant's knowledge of her disability").

## B. COBRA Violations

Plaintiff alleges that his rights under COBRA were violated because NYRA "failed to discuss or otherwise give notice to Plaintiff [of] Plaintiff's rights and entitlements under ... COBRA as required by law." Am. Compl. ¶ 9. NYRA states that it fully complied with COBRA by timely mailing the COBRA notice documents to Plaintiff. NYRA Mem. at 11–13.

COBRA provides employees who have group health insurance coverage through their employer the opportunity to elect to continue that coverage under the plan in the event of certain qualifying events. *See Polito v. Tri–Wire Eng'g Solution, Inc.,* 699 F.Supp.2d 480, 489 (E.D.N.Y.2010) (citing 29 U.S.C. § 1161). COBRA requires an employer to notify the plan administrator of the qualifying event "within 30 days thereof, and the plan administrator then has 14 days to provide COBRA notice to the ... employee." *Polito,* 699 F.Supp.2d at 489; *see Liles v. NYC Dep't of Educ.,* 516 F.Supp.2d 297, 316 (S.D.N.Y. 2007). The employee thereafter has a certain period of time to elect to continue coverage. *Polito,* 699 F.Supp.2d at 489 (citing 29 U.S.C. § 1161).

"COBRA contains no specific requirements as to the manner in which notice must be given." *Polito,* 699 F.Supp.2d at 489 (citing 29 U.S.C. § 1161). Moreover, "COBRA does not require actual receipt of notification by the plan participant; to the contrary, only a good faith attempt to notify is required." *Polito,* 699 F.Supp.2d at 490 (collecting cases); *see Crotty v. Dakotacare Admin. Servs.,* 455 F.3d 828, 830 (8th Cir.2006) ("[T]he statute

does not require proof of actual notice, so long as the administrator has sent the notice by means reasonably calculated to reach the recipient.").

 "In general, '[a]n employer or plan administrator who sends proper notice to the covered employee's last know[n] address is deemed to be in good faith compliance with COBRA's notification requirements.'" *Polito,* 699 F.Supp.2d at 489 (quoting *Tufano v. Riegel Transp., Inc.,* No. CV 03–0977, 2006 WL 335693, at *4 (E.D.N.Y. Feb. 11, 2006)). An employer is not required to "track down" a former employee to make sure he receives the COBRA forms. *Liles,* 516 F.Supp.2d at 317 ("It is not Defendants' obligation to track down Plaintiff in order to assure that he receives the COBRA forms that were sent to him."). "Plaintiff cannot state a claim under COBRA by merely claiming that he did not receive a letter that complied with the relevant notice provisions." *Id.; see Degruise v. Sprint Corp.,* 279 F.3d 333, 336 (5th Cir.2002) (finding that employer met its duty under COBRA to notify terminated employee of his right to continue health insurance coverage by sending a letter via certified mail to employee's last known address, notwithstanding the fact that the letter was returned as "undelivered"); *Chesney v. Valley Stream Union Free School Dist. No. 24,* No. 05 Civ. 5106, 2009 WL 936602, at *4 (E.D.N.Y. Mar. 31, 2009) ("COBRA does not require actual receipt of notification by the plan participant[.]").

As outlined in Section II, *supra,* Plaintiff's benefits ended as of December 31, 2010 because Plaintiff did not work the requisite number of hours set forth in the CBA. NYRA 56.1 Stmt. ¶ 73; Saccomano Aff. Ex. K; Saccomano Aff. Ex. I. Plaintiff was sent a notice of his COBRA rights by NYRA's COBRA administrator, ADP Benefit Services. NYRA 56.1 Stmt. ¶ 74; Sac-

comano Aff. Ex. I; *see also* Saccomano Aff. Ex. O. The COBRA notice, dated January 6, 2011, was addressed to "Luis Chiari and family" and sent to Plaintiff's address of record, namely, 80 Third Avenue, Lindenhurst, New York, where Plaintiff sometimes resides with his sister. NYRA 56.1 Stmt. ¶ 75; Saccomano Aff. Ex. O; Pl.'s NYRA Opp. at 5; Chiari Dep. 135:24–136:11.

During Plaintiff's deposition, Plaintiff confirmed that the COBRA documents were sent to his address of record, *i.e.,* his sister's address. Chiari Dep. 134:4–136:11, 174:15–175:15. Plaintiff also stated that he received the COBRA documents when he returned to New York from Kentucky. Chiari Dep. 134:4–136:11, 174:15–175:15. However, Plaintiff submits in his opposition that he never received the COBRA documents because he "wasn't home to get the documents." Pl.'s NYRA Opp. at 15. Plaintiff also provides a notarized letter from his sister stating that she never received the documents. *See* Letter of November 5, 2012 from Martha Ortega, attached as Ex. J to Pl.'s NYRA Opp. According to the Plaintiff, he later found the COBRA documents in a store room in Kentucky. Pl.'s NYRA Opp. at 15. In his opposition, Plaintiff concedes that he confirmed receipt of the COBRA package during his deposition, but that "based on recent recollections," he did not actually receive the package. *Id.* at 16. Importantly, Plaintiff does not appear to contest that the COBRA notice was mailed, nor does Plaintiff point to any evidence in the record to contradict NYRA's assertion that the COBRA notice was mailed.

 As an initial matter, the Court will not consider assertions Plaintiff makes within his opposition papers which contradict his sworn deposition testimony. Where a party submits a sworn affidavit contradicting his deposition testimony,

"[t]he rule in the Second Circuit is well-settled that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Berrios v. Nicholas Zito Racing Stable, Inc.,* 849 F.Supp.2d 372, 378 (E.D.N.Y. Mar.28, 2012) (citing *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir.1991)) (internal citations omitted); *see also Hayes v. N.Y.C. Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").

■ Even if the Court accepted all of the allegations in Plaintiff's opposition papers as true, there is nevertheless no material issue of fact sufficient to defeat summary judgment. Based on the foregoing case law, NYRA's duty to provide Plaintiff with his COBRA information was discharged once it sent the COBRA package to Plaintiff's last known address. *See Degruise,* 279 F.3d 333; *Polito,* 699 F.Supp.2d at 489; *Liles,* 516 F.Supp.2d at 317; *Tufano,* 2006 WL 335693, at *4. Plaintiff does not contest that the COBRA notice was mailed, nor does Plaintiff point to any evidence in the record to contradict NYRA's assertion that the COBRA notice was mailed. As such, this Court respectfully recommends to Judge Feuerstein that NYRA's motion for summary judgment be granted with respect to Plaintiff's claims regarding NYRA's alleged COBRA violations, and that such claims be dismissed with prejudice.

### C. Violations of the CBA and the Union's Breach of the Duty of Fair Representation

In his First Cause of Action, Plaintiff alleges that NYRA's "termination of Plaintiff's employment and discontinuance of . . . medical benefits was a violation of the terms and conditions of Plaintiff's employment with [NYRA]." *See* Am. Compl. ¶ 6. NYRA argues that Plaintiff testified during his deposition that the "terms and conditions of employment" he refers to are "corporate principles" based on what Plaintiff "read in the Corporate Act" relating to NYRA's obligations to advise him about continuing his medical coverage. NYRA Mem. at 12–13 (citing Chiari Dep. 154–55). On that basis, NYRA contends Plaintiff's claims should be dismissed as duplicative of his COBRA claim. NYRA Mem. 13. To the extent Plaintiff's allegations are duplicative of Plaintiff's COBRA violation claims, the Court recommends that NYRA's motion for summary judgment be granted on those claims, and that the claims be dismissed.

However, the claims outlined in Plaintiff's "First Cause of Action" could also be construed as an unlawful termination claim based on the "terms and conditions" of the CBA between the Union and NYRA. As such, Plaintiff's "Fourth Cause of Action" is duplicative of his "First Cause of Action." Plaintiff's "Fourth Cause of Action" specifically states that "Plaintiff's termination of employment by [NYRA] was in violation of the terms and conditions of the Collective Bargaining Agreement (CBA) between [the Union and NYRA]" Am. Compl. ¶ 18. Therefore, the allegations in Plaintiff's Fourth Cause of Action are in part duplicative of the allegations in Plaintiff's First Cause of Action. These claims will be examined together below.

Further, Plaintiff's First Cause of Action can also be interpreted to allege a claim that the termination of Plaintiff's medical benefits violated the CBA. Although such allegations are not expressly outlined in the Amended Complaint, be-

cause the Plaintiff is proceeding *pro* se, the Amended Complaint must be considered under a more lenient standard than that accorded "formal pleadings drafted by lawyers." *See Bellamy v. Mt. Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. June 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Therefore, this Court must construe the *pro se* Plaintiff's pleading broadly and interpret it to raise the strongest arguments that it suggests. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145–46 (2d Cir.2002). Plaintiff argues that the "discontinuance of ... medical benefits was a violation of the terms and conditions of Plaintiff's employment with [NYRA]." Since the terms and conditions of Plaintiff's employment with NYRA are set forth in the CBA, Plaintiff's First Cause of Action may therefore be interpreted to allege a claim that the termination of Plaintiff's medical benefits violated the CBA. Further, in his opposition papers, Plaintiff argues that his benefits "should not [have] ended on December 31, 2010 because ... he was on a reasonable leave of absence ...." Pl.'s Supp. Opp. at 4. Based on the foregoing, the Court interprets Plaintiff's First Cause of Action to assert a claim that the termination of Plaintiff's medical benefits violated the CBA. As such, the Court examines below Plaintiff's claims that (i) the termination of Plaintiff's employment violated the terms and conditions of the CBA (First Cause of Action and Fourth Cause of Action) and (ii) the termination of Plaintiff's medical benefits violated the CBA (First Cause of Action). The Court has jurisdiction over these claims pursuant to Section 301 of the LMRA. *See* 29 U.S.C.A. § 185(a) ("Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties ....").

Finally, Plaintiff alleges in his Fifth Cause of Action that the Union breached its duty of fair representation. *See* Am. Compl. ¶¶ 21–22. Although Plaintiff's claims of CBA violations against NYRA and Plaintiff's claims against the Union are distinct, "courts have combined them to create one claim known as the hybrid § 301/duty of fair representation claim ('hybrid § 301/DFR')." *Scott v. N.Y. Health and Human Servs. Union, 1199/ SEIU, AFL–CIO*, No. 00 Civ. 9381, 2003 WL 359534, at *5 (S.D.N.Y. Feb. 6, 2003); *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023, 2008 WL 2811816, at *4 (S.D.N.Y. July 21, 2008); *Castro v. 32BJ Union*, 800 F.Supp.2d 586, 591–92 (S.D.N.Y.2011) ("Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.' ") (citations omitted). Under a hybrid § 301/DFR claim, "[t]he plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." *White v. White Rose Food*, 237 F.3d 174, 178–79 (2d Cir.2001); *Stephens v. Maxx Props.*, 2012 WL 1949339, at *2 (E.D.N.Y. May 29, 2012). Thus, "a breach of the union's duty of fair representation is essential to both of [Plaintiff's] claims." *Stephens*, 2012 WL 1949339, at *2. As such, the Court will examine together Plaintiff's claims that (i) the Union breached its duty of fair representation and (ii) NYRA violated the CBA.

The Second Circuit has set forth the elements of a hybrid § 301/DFR claim. *See Sanozky v. Int'l Ass'n of Machinists and Aerospace Workers*, 415 F.3d 279, 282

(2d Cir.2005); *White,* 237 F.3d 174, 178–79. "To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White,* 237 F.3d at 178–79; *see Sanozky,* 415 F.3d at 282; *Pinkney,* 2008 WL 2811816, at *4; *Scott,* 2003 WL 359534, at *5. The Court examines each of these elements in turn.

### 1. NYRA's Alleged Breaches of the CBA

 As an initial matter, NYRA argues that any claims Plaintiff alleges involving a violation of the CBA cannot survive summary judgment because Plaintiff has not exhausted his remedies under the grievance procedures outlined in the CBA. NYRA Mem. at 14–16. The CBA contains a grievance procedure for employees to utilize through their union representation if they wish to grieve a decision affecting the terms and conditions of their employment. *See* Saccomano Aff. Ex. K, at 17–18. Under the CBA, all grievance disputes which are not resolved within a certain time frame—and which the party bringing the grievance intends to pursue—must be submitted to an impartial arbitrator. *Id.* Because the Union demanded arbitration on behalf of Plaintiff, NYRA argues, Plaintiff is required to "exhaust" his remedies under the CBA before bringing such claims in federal court. NYRA Mem. at 15. Apparently, the arbitration proceeding has not yet been resolved, and NYRA argues that summary judgment should be granted on that basis. However, NYRA acknowledges that an exception to the "exhaustion" requirement is available when a union wrongfully refuses to press a grievance on an employee's behalf. As noted, Plaintiff's Fifth Cause of Action alleges a breach of the Union's duty of fair representation. Therefore, solely for the limited purpose of examining the argu-

ments on the merits, the Court will assume that the "exhaustion" requirement is waived.

 As noted, the Court interprets Plaintiff's claims to allege that NYRA (i) unfairly terminated Plaintiff's medical benefits; (ii) unfairly terminated Plaintiff's employment; and (iii) failed to notify the Union of Plaintiff s termination. NYRA contends that its actions were in compliance with the CBA. NYRA Mem. at 20–22. "When courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with labor policies." *Scott,* 2003 WL 359534, at *9 (citing *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers v. United Tech. Corp.,* 230 F.3d 569, 576 (2d Cir.2000)). In general, to assert a breach of contract claim "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *See, e.g., Jones v. E. Brooklyn Sec. Servs. Corp.,* No. 11–CV–1021, 2012 WL 3235784, at *6 (E.D.N.Y. Aug. 7, 2012) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir.2004)). It is well-established that if the language of a contract is clear and unambiguous, its interpretation is a question of law left to the court; however, if the contract's language is ambiguous and susceptible to differing, reasonable interpretations, the contract's interpretation becomes a question of fact for a jury or trier of fact. *Scott,* 2003 WL 359534, at *9 (citing *Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2d Cir.1995)).

#### a. Allegations Regarding Denial of Medical Benefits

There was clearly a contract between the parties, satisfying the first element of the breach of contract test. As outlined above, the CBA contains a leave of absence

policy wherein a Union employee may request a long term or short term leave of absence. Saccomano Aff., Ex. K at 7. Plaintiff requested a leave of absence under the CBA from November 7, 2010 to March 15, 2011. Chiari Dep. at 97. NYRA granted this request. Further, the CBA indicates that in order to obtain medical benefits, a Union employee must work a minimum of 230 days in each calendar year. *See* Saccomano Aff., Ex. L at 3.

NYRA contends that Plaintiff's benefits ended as of December 31, 2010 as a result of Plaintiff not working the requisite number of hours set forth in the CBA. NYRA 56.1 Stmt. ¶ 73. Plaintiff does not claim that he worked more than the required 230 days. Further, the LOA Request Form signed by Plaintiff and an NYRA representative specifically states that Plaintiff's medical and other benefits would be discontinued during the leave of absence. *See* Saccomano Aff., Ex. L. The form includes the following phrase above the signature line: "I have read the above and fully understand that my Medical, Group Life Insurance and Disability will be terminated while I am on leave of absence ..." *Id.* Plaintiff has introduced no evidence to support any allegations that medical benefits were unfairly denied him during his leave of absence. In fact, Plaintiff acknowledged during his deposition that he had been advised of the policy by one of the supervisors and that he understood this was the policy that applied to everyone. Chiari Dep. at 91–92. Thus, any claim Plaintiff asserts regarding denial of medical benefits during his leave of absence cannot survive summary judgment.

### b. Allegations Regarding Plaintiff's Termination

While on his leave of absence, Plaintiff worked for horse trainer Tom Proctor in Florida through March 26, 2011. Conse-

quently, Plaintiff did not return to work by the March 15, 2011 deadline. However, Plaintiff was granted a short extension of his leave, and agreed to return to work by April 10, 2010. On April 13, 2011 Plaintiff emailed Mr. Hayward requesting a second extension of his leave, which was denied. Chiari Dep. at 105. Plaintiff continued to work for another employer throughout the spring and summer of 2011 and did not return to NYRA until mid-July 2011.

The CBA permits NYRA to automatically terminate the employment of a parimutuel clerk where the employee fails "for any reason other than illness to return to work within three racing days after the expiration of a leave of absence." Saccomano Aff., Ex. K at 7. However, the CBA also requires NYRA to notify the Union of the employee's absence three days prior to any termination. *Id.* at 7–8. Further, the CBA requires NYRA to "set forth in writing the reason or cause for such discharge and deliver such notice of discharge to the Union." *Id.* Plaintiff contends that he never received a formal letter terminating his employment and that the Union was never informed of his termination. Pl.'s NYRA Opp. at 7; Chiari Dep. at 165–166. NYRA does not appear to address this argument in its motion papers. Further, NYRA has not maintained that it set forth in writing the cause for Plaintiff's discharge or notified the Union of Plaintiff's termination in any way. However, even assuming NYRA's failure to notify the Union of Plaintiff's termination constitutes a breach of the CBA, Plaintiff's § 301/DFR claims cannot survive summary judgment because, as set forth below, Plaintiff has not introduced any evidence to support his claims that the Union breached its duty of fair representation.

### 2. The Union's Alleged Breach of its Duty of Fair Representation

Plaintiff appears to argue that shop steward Sal Zammitto did not fairly repre-

sent him throughout the grievance process (*i.e.*, Plaintiff's termination was not discussed as promised at a meeting between the Union and NYRA, and Zammitto did not appropriately advocate for his interests, despite Plaintiff's multiple phone calls to Zammitto for assistance). Pl.'s NYRA Opp. at 17–18; *see* Am. Compl. ¶¶ 21–22 (alleging that the "Union improperly represented" Plaintiff and "misguided" him); Chiari Dep. at 84–85. Further, Plaintiff argues that the Union legal team never contacted him about his termination; rather, the Union only reached out to Plaintiff once he added the Union as a defendant in this lawsuit. Pl.'s Union Opp. at 5. The Union argues that it appropriately addressed Plaintiff's concerns through the grievance procedure, and that the demand for arbitration was filed on July 3, 2012, almost three weeks before the Union was joined as a party to this action. Union Reply Mem. at 2–3. The Union also maintains that Plaintiff's claims are barred by the statute of limitations. Union Mem. at 6–7.

■ The duty of fair representation is based upon a recognition that "the statutory authority granted to unions to act as the exclusive representatives of all members created a statutory obligation on the part of the unions to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and avoid arbitrary conduct." *Scott,* 2003 WL 359534, at *6 (citing *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Johnson v. Soft Drink Workers Union,* 568 F.Supp. 1203, 1204 (S.D.N.Y. 1983) (explaining that the purpose of the duty of fair representation is to protect employees from union action that is discriminatory, dishonest, arbitrary or perfunctory)) (internal citations omitted). It is well settled that

A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith. A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.

*Sanozky,* 415 F.3d at 282–83. "To survive a motion for summary judgment, a plaintiff alleging a breach of the duty of fair representation must set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion." *Gold v. Local Union No. 888 U.F.C.W., AFL–CIO,* 758 F.Supp. 205 (S.D.N.Y.1991) (citing *Spielmann v. Anchor Motor Freight,* 551 F.Supp. 817 (S.D.N.Y.1982); *Helmer v. Briody,* 721 F.Supp. 498 (S.D.N.Y.1989)) (internal quotations omitted); *Ayazi,* 2011 WL 888053, at *6. Further, "[i]t is well settled that a union's duty of fair representation does not require it to pursue employees' complaints regardless of their merit." *Jiggetts v. Local 32BJ, SEIU,* No. 10 Civ.9082, 2011 WL 4056312, at *6 (S.D.N.Y. Aug. 10, 2011) (citing *Vaca,* 386 U.S. at 191, 87 S.Ct. 903) ("The individual employee [does not have] an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."); *Scott,* 2003 WL 359534, at *6 ("A union need not pursue a grievance that it believes meritless.").

■ The statute of limitations for bringing a duty of fair representation action is six months. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169–170, 172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Carrion v. Enter. Ass'n Metal Trades Branch Local 638,* 227 F.3d 29, 33 (2d Cir.2000). The statute of limitations be-

gins to run when the Plaintiff knew or should have known of the alleged breach of duty. *Carrion*, 227 F.3d at 34 (citing *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir.1997)).

Plaintiff's Union Shop Steward, Sal Zammitto, met with Plaintiff when he returned to New York in July 2011 to discuss Plaintiff's termination.[7] Chiari Dep. 125:2–23. On July 22, 2011, Sal Zammitto requested a meeting with Bonnie Parente, Director of Human Resources, regarding Plaintiff's termination. NYRA 56.1 Stmt. ¶ 64; Union 56.1 Stmt. ¶ 18; *see* Pl.'s NYRA Opp. at 7. The following day, on July 23, 2011, Plaintiff met with Zammitto and Parente. *See* NYRA 56.1 Stmt. ¶¶ 64–65; *see* Pl.'s NYRA Opp. at 7.

Subsequent to the meeting of July 23, 2011, Zammitto had further conversations with Bonnie Parente and with Robert Olenick, business representative for the Union. NYRA 56.1 Stmt. ¶ 66; *see* Response of Bonnie Parente to deposition questions Nos. 3 and 6, annexed as Ex. J to the Saccomano Aff. During these conversations, Parente explained to the Union that Plaintiff's employment was terminated because he failed to return from leave. NYRA 56.1 Stmt. ¶ 67. Plaintiff maintains that he contacted Zammitto multiple times after the meeting with Parente and that he was repeatedly told that "we are working hard on it." *See* Pl.'s NYRA Opp. at 8.

As noted, on or about August 5, 2011, the Union sent NYRA a letter stating that the Union "considers the termination of Luis Chiari to be unjust. The notice shall serve as the First Step in the grievance procedure, as per our Collective Bargaining Agreement." NYRA 56.1 Stmt. ¶ 69; Saccomano Aff., Ex. N; Union 56.1 Stmt. ¶ 19; Pl.'s NYRA Opp. at 8. Sal Zammitto told Plaintiff that the Union attorneys would bring up the issue of getting Plaintiff's job back at their next meeting with the NYRA in October 2011, during the contract negotiations for a new collective bargaining agreement. NYRA 56.1 Stmt. ¶ 70. Subsequent to the meeting, Zammitto told Plaintiff that "they could do nothing more with [his] case, that NYRA will stand with the position of termination." NYRA 56.1 Stmt. ¶ 71; *see* Pl.'s Union Opp. at 4; Chiari Dep. at 85. Plaintiff claims that Ms. Pavelka was present at the October 2011 Union meeting with the NYRA, and that she informed Plaintiff that the issue of his termination was never discussed. Pl.'s NYRA Opp. at 9. On July 3, 2012, five months after this lawsuit was commenced but before the Union was added as a Defendant, the Union filed a demand for arbitration. NYRA 56.1 Stmt. ¶ 72; *see* Union 56.1 Stmt. ¶ 20; Pl.'s Union Opp. at 3.

### a. Statute of Limitations

Defendants argue that Plaintiff's claims against the Union are barred by the six-month Statute of Limitations. According to the Defendants, Plaintiff should have known of any alleged breach of the duty of fair representation by October 2011, when Sal Zammitto informed Plaintiff that there was "nothing more" the Union could do with his case. Plaintiff did not file his claim against the Union until July 23, 2012,

---

7. There seems to be some discrepancy concerning when Plaintiff contacted Sal Zammitto regarding his termination. Plaintiff contends in his opposition papers that when he returned to New York in July 2011, Zammitto had not heard of his termination. Pl.'s NYRA Opp. at 7. Plaintiff also testified during his deposition that he did not contact anyone about his termination until he personally returned to New York. Chiari Dep. 124. However, Plaintiff also testified that he placed several phone calls to Zammitto prior to returning to New York, and that Zammitto knew about Plaintiff's termination before he returned to New York because they had previously discussed it on the phone. Chiari Dep. 125.

11 months after that conversation with Zammito. Therefore, Defendants maintain, Plaintiff's claims against the Union cannot stand as a matter of law.

■ Defendants make no mention of the well-settled rule that an amended pleading relates back to the date of the original pleading "when the claim or defense asserted ... arose out of the conduct, transaction or occurrence set forth ... in the original pleading." *See White*, 128 F.3d at 116 (2d Cir.1997) (citing Fed. R.Civ.P. 15(c)). Further, an amended pleading may relate back to the original pleading "even where the revised pleading contains legal theories not included in the original." *White*, 128 F.3d at 116 (citing *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125 (2d Cir.1994); *Villante v. Dep't of Corr. of the City of N.Y.*, 786 F.2d 516, 520 (2d Cir.1986)). In any case, without examining whether Plaintiff's claim against the Union is barred by the statute of limitations, this Court finds that these claims cannot survive summary judgment for other reasons, as set forth below.

### b. Plaintiff has Failed to Present Evidence that the Union Breached its Duty of Fair Representation

■ Plaintiff has not introduced any evidence to support his claim that the Union breached its duty of fair representation. While Plaintiff claims that Ms. Pavelka informed him that the issue of his termination was not discussed during the October 2011 meeting, Plaintiff has introduced no affidavit or deposition testimony from Pavelka attesting to the same. Further, Plaintiff has not introduced any evidence that the Union acted with "hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion." *Gold*, 758 F.Supp. at 208; *Spielmann*, 551 F.Supp. at 822; *Helmer*, 721 F.Supp. at 504; *Ayazi*, 2011 WL 888053, at *6. Instead, Plaintiff's own assertions during his deposition

illustrate that the Union was pursuing Plaintiff's grievance on his behalf. During his testimony, Plaintiff stated that Sal Zammitto "helped" Plaintiff during the meeting with Bonnie Parente. Chiari Dep. 128. Further, Plaintiff stated that Zammitto directed him to obtain a doctor's note regarding his ADD, in order to assist Plaintiff with his grievance. Chiari Dep. at 139. Plaintiff also states that he contacted Union lawyers who told him "we['re] working on the case but it's a tough case. We are going to see what we can do for you, Luis. Push to arbitration." Chiari Dep. at 170. In sum, the evidence shows that: (i) Sal Zammitto spoke with Plaintiff on several occasions regarding Plaintiff's grievance, and directed Plaintiff to obtain documents he thought would be helpful to Plaintiff's case; (ii) Zammitto represented that he was "working hard" on Plaintiff's case and Union attorneys also represented that they were working on the grievance; (iii) the Union filed a grievance letter on Plaintiff's behalf; (iv) the Union met with an NYRA representative to discuss Plaintiff's case; and (v) the Union filed a demand for arbitration regarding Plaintiff's case—the arbitration apparently has not yet been resolved. Plaintiff has not pointed to any specific evidence in the record, nor has this Court found any evidence in the record, to indicate that the Union acted with "hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion." *See Gold*, 758 F.Supp. at 208; *Spielmann*, 551 F.Supp. at 822; *Helmer*, 721 F.Supp. at 504; *Ayazi*, 2011 WL 888053, at *6. Even reviewing the evidence here in the light most favorable to the Plaintiff, the conclusory assertions of the Plaintiff on this claim against the Union fail to create a genuine issue of material fact. As such, Plaintiff's hybrid § 301/ DFR claim against NYRA for breach of the CBA cannot survive summary judgment. *See, e.g., White*, 237 F.3d at 178–79; *Stephens*, 2012 WL 1949339, at *2. There-

fore, the Court respectfully recommends to Judge Feuerstein that Defendants' motions be granted with respect to Plaintiff's § 301/DFR claims, and that these claims be dismissed, with prejudice.

### D. Plaintiff's Additional Arguments

Plaintiff *pro se* makes a number of immaterial arguments in his opposition and supplemental opposition papers in support of his various claims. For example, Plaintiff argues that he sent NYRA supervisor David Smukler a follow-up email requesting his job back, but that Smukler never replied. Pl.'s NYRA Opp. at 7; Pl.'s NYRA Opp., Ex. K. Further, Plaintiff argues that he was never provided a copy of the original LOA Request Form. Pl.'s NYRA Opp. at 5. The Court has examined each of Plaintiff's additional allegations as raised in Plaintiff's opposition papers and finds that these allegations do not create any material issues of fact which would defeat summary judgment.

### VI. CONCLUSION

For the reasons set forth above, this Court respectfully recommends to Judge Feuerstein that Defendants' motions for summary judgment be GRANTED, and that Plaintiff's claims be dismissed in their entirety.

### VII. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF, *except in the case of a party proceeding pro se. Pro Se Plaintiff Luis Chiari must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra J. Feuerstein, and to my chambers as well. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal.* Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.1997), *cert. denied,* 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

*Counsel for NYRA is directed to serve a copy of this Order upon Plaintiff pro se forthwith by overnight and first-class mail and to file proof of service on ECF.*

SO ORDERED.

August 14, 2013